## GODCHAUX SUGARS, Inc., v. MERIDIAN WHOLESALE CO.

(Circuit Court of Appeals, Fifth Circuit. May 4, 1923.)

No. 4017.

1. **Frauds, statute of** ⊙⇒89(1)—**Recognition of contract for sale of sugar and acceptance of part thereof held to take contract out of statute.**

A contract for the sale of sugar was taken out of the statute by letter of buyer referring to seller's "confirmation on this sale," which contained the terms of the sale, and by buyer's acceptance of part of the sugar ordered and payment therefor at the terms stated in the confirmation.

2. **Sales** ⊙⇒50—**Buyer held estopped to deny existence of contract.**

Where buyer of large quantity of sugar shipped in installments, after accepting part of the sugar, did not, in its letter to seller, contend that it had not assented to the terms stated in the broker's report of the sale, or deny the existence of the contract, but announced its purpose not to accept further shipments, unless it was allowed a cash discount thereon, which it had been allowed on previous contracts, and on receipt of reply to such letter sent its check for full invoice price of sugar theretofore received by it, it could not, on trial of action later brought by seller for unpaid balance on such contract and damages for refusal to accept later shipment, change its position and successfully contend that there never was a contract, in that it understood, when it gave its order, that the discount was to be allowed, and that the minds of the parties did not meet.

In Error to the District Court of the United States for the Southern District of Mississippi; William B. Sheppard, Judge.

Action by the Godchaux Sugars, Incorporated, against the Meridian Wholesale Company. Judgment for defendant, and plaintiff brings error. Reversed.

This was an action by the plaintiff in error, Godchaux Sugars, Incorporated (herein called plaintiff), against the defendant in error, Meridian Wholesale Company (herein called defendant), to recover the alleged balance of the price of sugar shipped by plaintiff to defendant on June 21, 1920, and the amount of the difference between the alleged contract price of sugar shipped by plaintiff to defendant in August, 1920, and the price received on a sale of that sugar on defendant's account after defendant had refused to accept the last-mentioned shipment, with interest on said amounts.

The defendant pleaded: (1) That it did not promise in manner and form as alleged by plaintiff; (2) that the supposed writing obligatory in the declaration mentioned is not its deed; and (3) that the several supposed contracts in the declaration mentioned were for the sale of goods, wares, or merchandise for the price of $50 or upward, and the defendant, being the buyer, did not receive part thereof, and did not actually pay or secure the purchase money or part thereof in pursuance of said alleged contract of sale, and no note or mem-

orandum in writing of said bargain was made and signed by defendant or by its agent thereunto lawfully authorized.

Plaintiff joined issue on those pleas. Evidence was adduced to the following effect:

Plaintiff sent the following telegram on the day of its date, the addressees being merchandise brokers at Meridian, Miss.:

"New Orleans, La., May 26, 1920.

"Hayward & Scott,. Meridian, Miss.

"Have purchased raws at price which will permit us to offer few cars of sixty thousand pounds each granulated at twenty-eight half cents net cash on receipt of documents. We have allotted you six cars of sixty thousand pounds each shipment June and ten cars shipment August subject reply Friday morning. Suggest that you give only one car to any one firm so as to distribute same as much as possible.                                    Godchaux Sugars, Inc."

The words "net cash" were known to the trade to mean that the face of the invoice must be paid within seven days after its date, and that there is no discount. N. O. Scott, a member of the firm of Hayward & Scott, testified that upon the receipt of the above telegram he took it to defendant's place of business and exhibited it to Mr. T. J. Bolster, defendant's manager, whereupon Mr. Bolster said defendant would take one car for each month, June and August. Mr. Bolster testified that he did not see that telegram until after this suit was brought; that on the occasion in question Mr. Scott came into defendant's office and said, "Godchaux is offering sugar for June and August delivery at 28½ cents;" and I said, "What are the other jobbers doing?" and he said, "They are taking theirs;" and I said, "I'll take mine. * * * There was nothing said about terms." There was a custom in that territory to allow 2 per cent. discount where a sale of sugar was made without terms being mentioned. After Scott saw defendant and other jobbers, he wired plaintiff the amount of sugar his firm had sold, and when he received an answer to his telegram confirming it, he made up triplicate reports of sale covering each purchase and delivered or mailed one to each purchaser, mailed one of each to plaintiff, and retained one of each. The following was the report of sale sent or delivered to defendant:

"Meridian, Miss., 5—27—20.

"Sold to Meridian Wholesale Company, Meridian, Mississippi, by Godchaux Sugars, Incorporated, New Orleans, Louisiana. Terms net cash. Shipment, 600 sacks in June. Same quantity in August, 1,200 100 pound sacks standard fine granulated 28½ net cash, f. o. b. refinery. Our wire 5—28—20. Your wire 5—28—20. Thanks."

On that instrument was stamped the words: "Received May 29, 1920. Meridian Wholesale Company." That report of sale was made by filling in a blank form of Hayward & Scott. Plaintiff usually furnished the brokers with a pad of printed blank forms for reporting sales. The above set out report of sale was made on one of the brokers' forms, because they were then out of the plaintiff's forms. The following were the initial words of one of plaintiff's printed forms: "Buyer's Copy. Godchaux Sugars, Incorporated." That form was on paper of a different color from that of the form of the brokers which was used. On May 31, 1920, plaintiff wrote to defendant as follows:

"You are no doubt aware of the present scarcity of equipment, in view of which the railroads have lately been furnishing us with only very large cars, which they have stipulated that we load to capacity, and in view of this situation we write to inquire whether it will not be satisfactory for us to load in one car the 400 bags due you for shipment in June at 16½ cents, less two, and the 600 bags at 28½ cents as per order given Hayward & Scott on the 27th, in the event of which we will be able to make very prompt shipment. Awaiting your advice, and with best wishes, we remain. very truly yours."

Pursuant to a subsequent request made by the defendant for the shipment at once of 600 100-pound sacks of sugar, plaintiff, on June 21, shipped to defendant in one car 600 bags of sugar, 400 thereof to apply on and complete the contract of February 25, and 200 thereof to apply to the contract of May 27. On the same day plaintiff sent to the defendant the following invoices:

"No. 5881.

"6/21/20.

"Meridian Wholesale Co., Meridian, Miss.
  "Less 2% 7 days from date of invoice.
  "Reserve, standard granulated, I. C. 170181.   400—100# bags Gran. Sug.
40000# at 16½c f. o. b. F. T. Y. $6,600.00.
  "Sale J—70 of 2/24th Ex. Res. 6/21st via Y&MV—Ala.   Vicksburg at Jackson, Miss.  B/L accompanying.
  "Brokers—Hayward & Scott.  B/L 3785."

"No. 5882.

"6/21/20.

"Meridian Wholesale Co., Meridian, Miss.
  "Net cash seven days from date of invoice.
  "Reserve, standard granulated, I. C. 170181.   200—100# bags Gran. Sug.
20000# at 28½c   f. o. b. F. T. Y., $5,700.00.
  "Sale J—111 of May 27th Ex. Res. 6/21st via Y&MV—Ala. Vicksburg B/L
accompanying.
  "Brokers—Hayward & Scott.  B/L 3785."

On June 28 defendant wrote to plaintiff as follows, inclosing check for
$12,054:

"Meridian Wholesale Company, Wholesale Only.

"Meridian, Miss., 6/28/20.

  "Godchaux Sugars, Inc., New Orleans, La.—Gentlemen:   Inclosed please
find check No. 207 in payment of

| | |
|---|---:|
| Invoice 6/21—5881—2% ......................................... | $ 6,600.00 |
| Invoice 6/21—5882—Net ....................................... | 5,700.00 |
| | $12,300.00 |
| Less 2 per cent. cash discount ................................. | 246.00 |
| | $12,054.00" |

On June 30 plaintiff wrote and mailed to defendant a letter stating:
  "We acknowledge receipt of your check No. 207 on the Guaranty B. & T.
Co. for $12,054, for which we thank you.  We note that you have deducted discount on invoice No. 5882, while terms are net seven days from date of invoice.
Thanking you to refund us this deduction of $114 at your earliest convenience,
we are, Yours very truly."
  Testimony adduced by the defendant was to the effect that the last-mentioned letter was not received.  Defendant did not comply with the request to
refund $114.  That amount, with interest, was claimed in this suit.  On June
29 plaintiff shipped 400 100-pound bags of granulated sugar, the balance due
for June shipment, and on same day sent defendant an invoice for that sugar
"at 28½ cents f. o. b. F. T. Y.—Net seven days from date of invoice."  On
July 6 defendant wrote plaintiff as follows, inclosing check for $11,172:

"Meridian Wholesale Company, Wholesale Only.

"Meridian, Miss., July 6, 1920.

  "Godchaux Sugars, Inc., New Orleans, La.  Gentlemen:—Inclosed please find
check No. ———, for $11,172:

| | |
|---|---:|
| In payment of invoice June 29th ............................... | $11,400.00 |
| Less 2% cash discount, $228.00 ............................... | 228.00 |
| | $11,172.00 |

  "Yours truly."
On July 9th, plaintiff wrote defendant a letter as follows:

"New Orleans, La., July 9, 1920.

  "Meridian Wholesale Co., Meridian, Miss.—Gentlemen: We have your check
for $11,172 on account our invoice No. 6008 of June 29th, for $11,400, and
note that you have deducted 2% discount amounting to $228, which is in
error as terms are Net Cash.  Thanking you to favor us with remittance to
cover deduction in error, we are,
  "Yours very truly."

On July 10th, defendant wrote to plaintiff a letter as follows:

"Meridian, Miss., July 10, 1920.

"Godchaux Sugars, Inc., New Orleans, La. Gentlemen:—We have your letter of the 9th relative to our deduction of 2 per cent. discount on your invoice No. 6008 of June 29th, in which you advise that this sugar was not subject to a discount, being sold net. This was not the terms of sale on former purchases, and we have received no notice of any change in your terms except your confirmation on this sale. Unless we are allowed the cash discount on future shipments, we notify you now that we will not accept shipments in the future.

"Yours truly."

On July 13, plaintiff wrote to defendant the following letter:

"New Orleans, La., July 13, 1920.

"Meridian Wholesale Company, Meridian, Mississippi—Gentlemen: We have your letter of the 10th in reference to deduction of 2% discount on invoice 6008 of June 29th, and note that because previous invoices were not net, you object to refunding the discount erroneously deducted, and that if we do not allow this discount, you will decline to accept car due you on contract for August shipment. We do not know the gentleman who wrote the letter, but we are of the opinion that it was not written by one of the officers or managers of the company, as they would not have written in such manner, especially when the letter admits that confirmation of contract dated May 27th specifically mentions 'net cash,' and it is unusual that the buyer should make no complaint at the price until goods have been shipped and payment due. We therefore beg to request that this matter be taken up by an officer of the company, as we believe he will admit that irrespective of what terms might have been previous to contract of May 27th; said contract of May 27th stands on its own merits, and as it specifically states the terms not only once, but twice, there can be no misunderstanding."

On July 14 defendant wrote to plaintiff a letter as follows, inclosing check for $228:

"Inclosed please find check No. ——— for $228.00 in payment of refund of discount deducted from your invoice of 6/29, paid by us 7/6."

On July 23 defendant wrote plaintiff a letter as follows:

"We have this day notified our shipping department to reject, until further notice, all sugar shipments consigned to us by you."

On July 26 plaintiff wrote to defendant as follows:

"We acknowledge receipt of your favor of the 23d, reading 'We have this day notified our shipping department to reject, until further advice, all sugars shipments consigned to us by you,' which we do not understand, as we have no idea why you should take such a position. You have a contract with us; we expect to carry out our end of it and expect you to do the same. Will you please give us more information on the subject, and oblige."

The defendant did not reply to plaintiff's letter of July 26 until August 26, after the plaintiff had, on August 25, shipped to defendant the sugar contracted to be shipped in August, which defendant did not accept or pay for. Defendant's letter of August 26 was a long one, most of it referring to what had occurred under a contract made February 25, 1920, for the sale of sugar by the plaintiff to defendant. The sugar called for by that contract was shipped, accepted, and paid for. No question as to that transaction was raised by the pleadings in this case. That letter contained no intimation that the above set out report of sale did not correctly state the terms of the contract between the parties. There was no evidence to support a finding that defendant made such a contention before this suit was brought. Bolster testified that upon the receipt of plaintiff's above set out letter of July 9 he looked in his company's files for the contract and, not finding it, 'phoned to Hayward & Scott, asking them to lend him a copy of the record, and that when he wrote the above set out letter of July 10 he had before him Hayward & Scott's copy of the report of sale dated May 27. There were verdict and judgment in favor of the defendant, after plaintiff excepted to the refusal of the court to charge the jury to find for plaintiff.

R. E. Wilbourn, of Meridian, Miss. (Milling, Godchaux, Saal & Milling, of New Orleans, La., Baskin & Wilbourn and R. E. Wilbourn, all of Meridian, Miss., and R. C. Milling, of New Orleans, La., on the brief), for plaintiff in error.

A. S. Bozeman and Ben F. Cameron, both of Meridian, Miss., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge (after stating the facts as above). [1] No evidence adduced supported the averments of the third above mentioned plea. Uncontradicted evidence showed that defendant received and accepted part of the sugar called for by the report of sale dated May 27, and for part of the sugar so accepted paid the price stated in that instrument, "28½ net cash f. o. b. refinery." Evidently that plea was based upon the provision of the Mississippi statute of frauds which in effect requires, as to a contract for the sale of personal property, goods, wares, or merchandise for the price of $50 or upwards, some note or memorandum in writing of the bargain to be made and signed by the party to be charged or his agent thereunto lawfully authorized, "unless the buyer shall receive part of the personal property, goods, wares, and merchandise, or shall actually pay or secure the purchase money, or part thereof." Code of Mississippi of 1906, § 4779. It may be assumed, without being decided, that that statute applied to the transaction in question, though the contract was to be filled in the state of Louisiana, by delivery of the sugar ordered f. o. b. the refinery of the plaintiff, which is located at Reserve, La.

In the trial defendant raised no question as to its order for sugar given to the brokers on May 27, otherwise than by contending that it so gave the order as to make the price stated, 28½ cents a pound, subject to a discount of 2 per cent. in the event of payment within seven days from date of invoice. It is apparent that plaintiff's above set out letter of May 31 was written soon after its receipt of the report of sale made by the brokers. That letter indicated that the terms of that order were not the same as those of a previous unfilled order, by referring to "the 400 bags due you for shipment in June at 16½, less two, and the 600 bags at 28½ cents as per order given Hayward & Scott on the 27th." The defendant replied to that letter without controverting its statement of terms of sale. Defendant's reference in its letter of July 10 to "your confirmation on this sale" amounted to embodying in that letter the instrument so referred to, which contained the statements: "Terms net cash;" "28½ net cash f. o. b. refinery." The contract was taken out of the statute of frauds by defendant's recognition above its signature of the written statement of terms of the sale, and by its acceptance of part of the sugar ordered and payment therefor in pursuance of the terms so stated. Bibb v. Allen, 149 U. S. 481, 13 Sup. Ct. 950, 37 L. Ed. 819; Garfield v. Paris, 96 U. S. 557, 24 L. Ed. 821.

[2] In its letter of July 10 defendant did not intimate that, before the shipment of June 29 was made, it had not assented to the terms stated in the brokers' report of sale, did not contend that it had not con-

tracted as stated in plaintiff's letter of July 9, and did not offer any explanation of its acceptance of the sugar shipped on June 29 after being informed by the invoice sent the same day that that sugar was sold at "28½ cents f. o. b. F. T. Y. Net seven days from date of invoice." Without denying the existence of the contract as it was stated by plaintiff, defendant announced its purpose not to accept future shipments unless it was allowed the cash discount thereon. Defendant's letter evidences a purpose to cancel an unfilled part of its order without claiming that the order as transmitted by the brokers to plaintiff was not given by defendant, or that a right to cancel was, or was intended to be, stipulated for. The threat not to accept future shipments unless the 2 per cent. discount was allowed was based, not on a claim that defendant's order for the sugar in question was so given as to entitle it to such discount, but on the circumstance that such discount was allowed by the terms made on former purchases.

The mere fact that one who has ordered goods attempts, before their delivery, to get the seller to consent to terms allowed on former sales, by no means proves or tends to prove that the former understood at any time that he was to be entitled to have such terms applied to the sale in question. The defendant, without controverting the statement in plaintiff's letter of July 13 of the terms of the contract of May 27, on July 14 sent its check for the amount of the 2 per cent. deduction previously made from the invoice price. Under the circumstances, that action amounted to an admission by defendant of the correctness of the position taken by the plaintiff. In the trial for the first time defendant contended that, when it gave the order for the sugar on May 27, it understood that the terms were to be different from those stated in the written report of sale made by the brokers, and that it was to be entitled to a 2 per cent. discount in case of payment within seven days from the date of an invoice, with the result that as to the terms of sale the minds of buyer and seller did not meet, and that the former was not obligated to pay for sugar not accepted by it.

It was contended in behalf of defendant that its retention of the brokers' report of sale, without raising any question as to that instrument's statement of the terms, did not prove defendant's acquiescence, because its manager did not see that instrument until long after its receipt by defendant, and because the circumstance that the report of sale was made on the brokers' form, instead of on plaintiff's printed form, kept it from being treated by defendant as having any significance or effect or as calling for a dissent from its statement of terms in a respect wherein such statement might be claimed to be incorrect. It is not material to inquire whether defendant's silence as to the report of sale did or did not mean consent prior to that instrument coming to the notice of Bolster, as when it did come to his notice after plaintiff had shipped half of the sugar ordered and had pointedly invoked the report's statement of the terms of the contract, he made no claim in behalf of defendant that that instrument misstated the contract in any respect; but, on the contrary, defendant, by complying with the terms stated in the report of sale, admitted that they were binding on it. There was no evidence to warrant a finding that the circumstance that the brokers made the triplicate written memorandum of the terms

of sale on forms of their own, instead of using plaintiff's printed forms, kept the instrument sent by them to defendant from serving the purpose of putting defendant to its election between giving or withholding its assent to the terms therein stated.

In the circumstances attending the initial correspondence between the parties in reference to the order given on May 27, it was apparent that plaintiff was basing its action on the order as transmitted to it by the brokers. Defendant then knew, or had readily accessible means of knowing, the contents of the report of sale made by the brokers. It seems that defendant, knowing that plaintiff was relying on the order as reported by the brokers, and either knowing the contents of the report of sale made by the brokers, or neglecting to acquire that knowledge, though it easily could have acquired it, could not fail to question the correctness of the brokers' report of sale while plaintiff was changing its position by doing what that instrument's terms required of it, and remain free to do so after plaintiff had acted on the faith of the order as reported by the brokers.

The result to which the foregoing considerations point may be based on another and different ground. Prior to the bringing of the suit the defendant took no position in reference to complying or not complying with the terms of the order given through the brokers on May 27, otherwise than by giving notice that it would not accept future shipments unless it was allowed the cash discount thereon, and based its announced purpose not to comply with the terms of the order as reported by the brokers on the sole ground that the terms of sale stated therein were not the terms of sale on former purchases, and that it had received no notice of any change in plaintiff's terms, except its confirmation on this sale. The defendant, having, before the suit was brought, based its refusal to comply with the terms of payment stated in the brokers' report of sale on the untenable ground that those terms differed from the terms on former purchases, cannot properly be permitted, after the suit was brought, to set up another and different defense. It is estopped from so changing its ground.

"Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration." Ohio & Mississippi Valley R. R. Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693; Luckenbach v. Grace (C. C. A.) 267 Fed. 676; Board of Trustees v. Spitzer (D. C.) 255 Fed. 136.

It is apparent that a buyer has taken different and inconsistent positions when, before being sued, he based his threatened or actual refusal to accept goods on the terms of payment being different from those allowed on a former sale, without claiming that he was not bound by the order for the goods as transmitted through brokers, and, after being sued on such order, sought to base his failure to comply with its terms on the ground that he never gave or assented to that order.

The conclusion is that under the pleadings and the evidence adduced the plaintiff was entitled to recover, and that the court erred in refusing to give the above mentioned requested charge to the jury. Because of that error, the judgment is reversed.