## SAVANNAH CHEMICAL CO. v. W. R. GRACE & CO. [*]

### (Circuit Court of Appeals, Fifth Circuit. October 11, 1923.)

### No. 4117.

**1. Sales ⊛176(3)—Buyer estopped to change ground for refusal to accept delivery.**

Where a buyer refused to accept delivery on the sole ground that it was not within the time required by the contract, it is estopped to defend against an action for breach on the ground that the contract was invalid.

**2. Sales ⊛161—Delivery to carrier by direction of buyer is delivery to him.**

When a purchaser of goods directs their delivery for his account to a designated carrier, the latter becomes his agent, and delivery to such carrier is a legal delivery to him.

**3. Sales ⊛162—Delivery by seller held effective.**

Where the seller of a commodity had on storage with the carrier, to which the buyer directed delivery to be made. a larger quantity than that sold. and the carrier accepted an order for delivery of the quantity sold to the buyer, separation of such quantity from the mass in storage was not required to make such delivery effective.

In Error to the District Court of the United States for the Southern District of Georgia; William H. Barrett, Judge.

Action at law by W. R. Grace & Co. against the Savannah Chemical Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Shelby Myrick, of Savannah, Ga., for plaintiff in error.

Paul E. Seabrook and H. Wiley Johnson, both of Savannah, Ga. (John G. Kennedy, of Savannah, Ga., on the brief), for defendant in error.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. The defendant in error, W. R. Grace & Co., a corporation, recovered a judgment against the plaintiff in error for the amount of the ascertained difference between the market price of 250 tons of nitrate of soda and the price stated in a contract of the defendant to purchase that commodity. The parties will be referred to by their designations in the trial court. The petition showed that the contract sued on was evidenced by a written instrument dated August 16, 1920, signed by the defendant as buyer and by James G. Crafts & Co., Inc. (herein called Crafts & Co.), as seller. That instrument showed that the subject of it was 250 tons of nitrate of soda. It contained the following provisions:

"Port: Savannah, Ga. Expected to Arrive: December, 1920. * * * Sale is also subject to the following expressed terms and conditions:

"Shipment by steamers or equivalent sailers expected due to arrive from the west coast of South America at the port or ports during the months herein mentioned. No arrival no sale. Sellers have option of making equivalent delivery ex vessel and/or ex store and/or shipping the nitrate for delivery under this contract to or from any port or place in the United States under the same conditions provided that in case of change of port from that above named sellers shall equalize freight to destination named by buyer on quantity so substituted.

"Vessel's name may be given at any time after execution of contract, sellers reserving the option of substituting with or without notice another vessel or vessels in approximately similar position. Should any vessel or vessels, before or after being named by the sellers, be lost, damaged, commandeered, diverted by government order, seized, captured, or delayed, before or after sailing, a reasonable time is to be allowed sellers to substitute another vessel or sellers may at their option cancel portion so affected. Notice of such substitution or cancellation shall be given by sellers to buyer and such right of substitution includes re-substitution with notice.

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*

"Nitrate to be taken by buyer at port of arrival or place when ready for delivery, ex vessel and/or ex store as above, in single bags in customary good order. Buyer to give shipping instructions promptly after notice of time of expected arrival. Failure to give prompt shipping instructions may, at sellers' option, be deemed refusal to take the nitrate. Wharfage and transfer charges, if any, at port of arrival, shall be for account of buyer.

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*

"In case performance by sellers shall be delayed or rendered impossible by force majeure, including war, governmental authority, embargoes, prohibition of or restriction upon exports or imports, civil commotions, labor difficulties, accidents, loss or damage by act of God or the elements, interferences with tonnage or transportation, closing or interruption of customary short routes of transportation (including closing of Panama Canal) or any other contingency beyond sellers' control, and whether herein specifically enumerated or not, in connection with the production, refinement, or transportation of the nitrate of soda covered by this contract, expected arrival shall be extended for a period equal to the duration of the contingency and for a sufficient time thereafter in which to make shipments. Sellers shall in no event be held responsible for any contingency beyond their control whether herein specifically provided for or not."

The petition, as it was amended, contained averments to the following effect: Crafts & Co., in executing said contract, acted as plaintiff's agent, and said contract was made by said agent for and in behalf of plaintiff only. For the purpose of fulfilling that contract plaintiff bought a cargo of South American nitrate of soda, and caused the same to be shipped from the west coast of South America to plaintiff at Savannah, by a named steamship, which was expected to arrive at Savannah in the month of December, 1920, and which did arrive at that port on December 29, 1920, with said cargo of nitrate on board. Before the arrival of that vessel plaintiff elected to exercise the option given by the contract to deliver the nitrate from storage, and gave notice to defendant to that effect on December 20, 1920, through Crafts & Co., plaintiff then having stored in the terminal warehouse of the Central of Georgia Railway Company at Savannah more than 250 tons of nitrate. On December 21, 1920, defendant, through Crafts & Co., requested that said nitrate be shipped to defendant at its factory at location 225 on the tracks and terminals of the Central of Georgia Railway Company in Savannah. On December 22, 1920, plaintiff, in compliance with defendant's request, surrendered to the Central of Georgia Railway Company the latter's storage receipt for the nitrate stored in its warehouse, with an order to said railway company to ship and deliver therefrom to defendant, at location 225, 250 tons of said nitrate. The Central of Georgia Railway Company, on December 24, 1920, received and accepted that order, had loaded in good order in bags 250 tons of nitrate into eight freight cars, three of which cars, on December 31, 1920, were shipped by the railway company from its warehouse to lo-

cation 225 on its terminals, for delivery to the defendant; three of which cars were so shipped on January 3, 1921, and the remaining two cars on January 4, 1921. When that nitrate was so transported and tendered to defendant by said railway company, defendant declined to receive it, solely for the reason that it had not all been delivered by the railway company at location 225 in the month of December, 1920. The above-mentioned allegations were supported by evidence adduced. The evidence disclosed the following: At the time of the execution of the above-mentioned instrument, dated August 16, 1920, there was in existence another instrument identical in terms except that such other instrument was dated August 13, 1920, and the parties to it were Crafts & Co., as buyer, and the plaintiff as seller. A letter from plaintiff to Crafts & Co., dated December 18, 1920, stated:

"We beg to advise you that the lot of 560,000 pounds nitrate of soda sold you for December arrival at Savannah under contract of August 13, 1920, folio No. 6306, is now ready for delivery at the above-mentioned port. Please arrange to send shipping instructions at once to the Nitrate Agencies Co., Savannah Bank & Trust Bldg., Savannah, Ga., in order that prompt shipment can be accomplished."

Crafts & Co. sent that letter to defendant. A letter from defendant addressed to Crafts & Co., dated December 21, 1920, and attached to plaintiff's letter to Crafts & Co., dated December 18, stated:

"Referring to the attached. Please have this nitrate shipped to the Savannah Chemical Co., location No. 225 Central of Georgia Railway Terminal, Savannah, Georgia."

The claim asserted was resisted on the following grounds: That the contract sued on was unilateral and void, the contention being that the clause, "no arrival no sale" destroyed mutuality and kept the instrument from binding the plaintiff to comply with its terms; and that delivery was not made in December and from a vessel which arrived during that month.

The question whether the instrument dated August 16, 1920, when it was signed, was or was not effective as a contract and binding on the plaintiff became immaterial as a result of what afterwards happened. If the plaintiff was not bound before, it became bound when its offer to fulfill the contract was accepted by the defendant. Both plaintiff and defendant then in writing over their signatures recognized their respective obligations as seller and buyer, as defined in the instrument sued on.

[1] The terms of the written instrument negative the conclusion that the seller obligated itself to deliver the nitrate called for from a ship arriving in December. The provisions,

"Sellers have option of making equivalent delivery ex vessel and/or ex store and/or shipping the nitrate for delivery under this contract to or from any port or place in the United States; * * * nitrate to be taken by buyer at port of arrival or place when ready for delivery, ex vessel and/or ex store as above,"

are inconsistent with the existence of an intention to make delivery from a ship arriving or expected to arrive in December the exclusive method of complying with the obligation incurred. However, without regard to the correctness of the just stated conclusion, we think the de-

fendant was precluded from defending on the ground that it was not tendered nitrate from a ship arriving in December, as, before the suit was brought, its denial of liability was put on the sole ground that the nitrate was not delivered in December. Godchaux Sugars, Inc., v. Meridian Wholesale Co. (C. C. A.) 289 Fed. 359.

[2, 3] We are of opinion that what the averments and proof showed was done had the effect of a delivery of the nitrate to the defendant in December, 1920. As above indicated, upon the defendant being notified of plaintiff's readiness to deliver the nitrate, the former requested that the nitrate be shipped to itself at location 225 on the terminals of the Central of Georgia Railway Company in Savannah; whereupon the plaintiff, on December 22, 1922, surrendered to that railway company the receipts issued by it to plaintiff for nitrate on storage, and gave the railway company a written order to ship 250 tons of such nitrate to defendant at location 225 on the terminals of the railway company in Savannah, which order was accepted by the railway company on December 24, 1920. When a purchaser of goods directs their delivery for his account to a designated carrier, the latter becomes the agent of the purchaser, and delivery to such carrier is a legal delivery to the purchaser. United States v. R. P. Andrews & Co., 207 U. S. 229, 240, 28 Sup. Ct. 100, 52 L. Ed. 185. It was alleged and proved that the plaintiff, after such order was accepted by the railway company, had no further control over the nitrate ordered to be shipped to defendant. Under such circumstances separation of the nitrate ordered to be shipped from the mass on storage was not required to make the delivery effective. 35 Cyc. 295. Delivery having been made in December, it is not material to inquire whether plaintiff's right to recover was dependent on delivery having been made during that month.

Other rulings complained of were not such as call for discussion. It is enough to say that none of them was erroneous.

No reversible error being shown by the record, the judgment is affirmed.