C. G. BALL (Margaret Eliza Ball, Temporary Administratrix, etc., substituted in place of C. G. Ball, deceased), Appellant,

v.

VICTOR ADDING MACHINE COMPANY, Appellee.

No. 15883.

United States Court of Appeals Fifth Circuit.

Aug. 10, 1956.

Rehearing Denied Sept. 12, 1956.

---

William B. Henley, Jr., Dallas, Tex., Harris, Anderson & Henley, Dallas, Tex., of counsel, for appellant.

Clinton Foshee, John N. Jackson, Coke & Coke, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Ball (now succeeded by his widow), a long-time, 33-year veteran employee of McCaskey Register Company (merged in 1953 with Victor), sought by money judg-ment and injunction against Employer to compel the Employer to take steps neces-sary to secure to him the admitted "re-serve liability attributable to him" of $8,260.98 under an approved Retirement Pension Trust (adopted in 1947), as a re-sult of his having been discharged for medical disability.

The Pension Plan followed the typical format for an employer-contributing trust. An Ohio bank, appointed Trustee by the Board of Directors of the Employ-er with absolute right to remove and ap-point successor trustees, had the obliga-tion to receive Employer contributions, invest and disburse trust funds, but pay-ments of benefits could be made only upon express direction of the Retirement Com-mittee comprising three employees again named by the Employer's Board of Di-rectors to serve "during the pleasure of the Board" giving the employer thus the absolute right of removal and appoint-ment of successor Committee members. And, of course, the Employer expressly agreed to pay all expenses of the Trustee and Retirement Committee, to indemnify them fully against all costs and losses, and provide and pay for all legal services.

Ball's efforts to obtain what he claimed was due him met with no success. The Employer, three months after its formal letter discharging him "due to the state of your health", laid down its policy that he was not entitled to benefits because (a) he had been discharged for cause, i. e., inefficiency as Division Sales Manager for the Dallas, Texas territory, and (b) in any case, having gone on a commission basis when he accepted that position, he was no longer a "participant" under the Plan. The Trustee declined to pay or rule on the matter because (and it is agreed that this position was sound) it could pay only upon express direction of the Re-tirement Committee. The Retirement Committee in effect denied the claim be-cause his commission status excluded him as a "participant." And when he sought a determination by a Court of whatever rights he might have under this detailed agreement between his Employer and all employees included under it, he was met

by the Employer's defenses (1) disputing his right under his contract of employment and the Plan to any benefits because (a) he was not a "participant" and (b) had been discharged for cause (not medical disability), and contending (2) that the Employer had no further personal liability after its contributions were made, and (3) that the Trustee and Retirement Committee were both indispensable parties. To this the District Court, after a trial which convincingly established that Ball became totally disabled (and for which reason the Judge apparently thought he was discharged), adding one with no record foundation that Ball had failed to exhaust his claim against both Trustee and Retirement Committee so that relief by Court action was premature, then dismissed the complaint "without prejudice to an action in a Court of competent jurisdiction against the Trustee *and* Retirement Committee under the Retirement Trust * * *" of the Employer. (Emphasis added.)

The trouble is that this is not only to deny relief altogether but to deny even the opportunity for a Judge to determine what, if any, legal rights Ball had and the scope and nature of any permissible Court review of action by Employer, Trustee and Retirement Committee. This is so because, with the Trustee in Ohio and the Retirement Committee composed of Illinois citizens residing and located there, simple geography makes the condition impossible to meet. Moreover, wherever the employee goes to pursue the Retirement Committee, the Employer can defeat it by the simple expedient of naming a new Committee composed of citizens of another state or, to make it more complex, of citizens of three different states.

The question then is whether a Federal Court of equity with admitted jurisdiction over the Employer in a diversity action brought by the employee has, and should exercise, power to assure that a forum is available to determine what, if any, rights an employee may have to have decisions under the Pension Plan reexamined by a Court.

The inquiry is not a mere academic one. For while Ball's acceptance of the position of Division Sales Manager may have put him in a commission status (and not, as claimed by him, a minimum guaranty more like a salary with commission bonus incentives) so that he may not have been a "participant" as to his subsequent continued employment with the Employer, the Plan contains no provision remotely working a forfeiture of "the reserve liability then attributable" and then accrued to him from contributions already made by the Employer up to the time of any such asserted change from salaried to commission status. And yet that was the effect of the Retirement Committee's "Ruling." Whether a Retirement Committee has the right to make so decisive and possibly so wrong a decision without *some* Court reexamination presents a substantial question.

In pursuing this inquiry, it is important to emphasize that this does not involve a request that a non-resident court (in Texas) undertake direction, supervision, or control over the management of a Trust which, of necessity, must answer alone to the courts of the state (Ohio) where it is maintained, Hobbs v. Lewis, 1954, 197 Tenn. 44, 270 S.W.2d 352; Kane v. Lewis, 1953, 282 App.Div. 529, 125 N.Y.S.2d 544; People v. First National Bank, 364 Ill. 262, 4 N.E.2d 378, 108 A.L.R. 277. There is really no controversy between Ball and the Trustee. The Trustee will not pay, but solely because the Retirement Committee has not made the certification indispensable to payment under Section 9.3(b), "If by reason of disability * * * a participant shall cease to be employed by the company, the Committee shall certify that fact to the trustee, and such disabled participant shall be entitled to receive from the trustee an amount equal to the reserve liability then attributable to him." Moreover, if it is ultimately held that Ball's claim is correct, it will have no effect on the internal accounting, solvency or position of the Trust since it was stipulated that the funds for the precise amount sought are, in effect, earmarked as the "reserve li-

ability then attributable to him." And in any case it is the Employer, not the Trustee, who would be required under the Plan to make such further contributions of "such amounts of money as may be necessary from time to time * * * to provide the benefits to which participants * * * are entitled under the plan." Nor is this affected by the provision in the Plan that in "any * * * judicial proceeding affecting the trust, it shall be necessary to join as parties only the Trustee, the company and the committee." It it applies at all to this particular situation it seems clear that this is intended to specify the *maximum* parties required. Its principal function is to eliminate doubt as to other possible parties, such as all of the affected employees, the corporation, its Board of Directors, etc.

And with the Pension Trust itself providing that, "This agreement and the trust hereby created shall be construed, administered, and governed in all respects under and by the laws of the State of Ohio", a state which holds the view that pension plans are enforceable contractual incidents of employment, Wilson v. Rudolph Wurlitzer Co., 1934, 48 Ohio App. 450, 194 N.E. 441; Sigman v. Rudolph Wurlitzer Co., 1937, 57 Ohio App. 4, 11 N. E.2d 878, the relevance and application of the Texas cases discussing the nature of the Court review of the Employer's actions under plans making decisions conclusive (no such provision exists in this case), Magnolia Petroleum Co. v. Butler, Tex.Civ.App., 86 S.W.2d 258, error dismissed; Webster v. Southwestern Bell Telephone Co., Tex.Civ.App., 153 S.W.2d 498, error refused; Aston v. Magnolia Petroleum Co., Tex.Civ.App., 241 S.W.2d 306, error refused; Spiner v. Western Union Telegraph Co., Tex.Civ.App., 73 S.W.2d 566, error refused, so strongly pressed by the Employer, not to defeat jurisdiction for want of essential parties, but again in its role as an adversary refuting the existence of any legal liability on the merits, seems highly doubtful.

And the idea that a Pension Trust expressly approved, as was this one, by the Internal Revenue Service as a plan qualified under Section 165, 1939 Code, 26 U. S.C.A. § 165; 1954 Code, § 401, 26 U.S. C.A. §§ 401, 402, is a mere gratuity or charitable enterprise beyond even the barest scrutiny by its sole beneficiaries (the employees) is completely out of keeping with the philosophy and purpose of such plans as the means of paying *additional* compensation to the covered employees in a way to afford substantial and immediate tax advantages to the Employer and substantial tax and monetary benefits to the employees. See, Law of Federal Income Taxation, Mertens, 1942 Vol. 4, § 25.69, page 440, §§ 25.70 to 25.76, incl., and full historical background, 1954 Pocket Supplement, §§ 25.70 to 25.-75. A pension trust is no will of the wisp for " * * * within the meaning of section 165(a) [it] is a plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to his employees over a period of years, usually for life, after retirement * * *." Federal Tax Regulations, § 39.165–1(a) (2). And see, §§ 39.165–1(a) (3), 39.-165–4(e). So much so is it for the employees that the statute, Sec. 165(a), requires that the Pension Trust be "for the exclusive benefit of [the] employees" with distribution of corpus and income of such trust limited to "such employees or their beneficiaries" with an absolute prohibition against use or diversion of any such funds to "purposes other than for the exclusive benefit of [the] employees or their beneficiaries". It must be non-discriminatory as to employees, Regulations, §§ 39.165–1(a), 39.165–4, and forbid diversions, § 39.165–2; and the Employer's contributions are in no sense a gift for they are deductible, " * * * only to the extent that they are ordinary and necessary expenses * * * in carrying on [the] trade or business and are compensation for personal services actually rendered * * *" and together with all other compensation paid to the employee constitutes "a reasonable allowance for compensation for the services actual-

ly rendered * * *", Regulations, § 39.23(p)–1–(b), see, e. g., Farnsworth & Co. v. Commissioner, 5 Cir., 203 F. 2d 490. "It surely cannot be seriously disputed but that such [a pension agreement] on the part of the company forms a part of the consideration for work performed * * *. In this view, the pension thus promised would appear to be as much a part of his 'wages' as the money paid him at the time of the rendition of his services." Inland Steel Co. v. N. L. R. B., 7 Cir., 170 F.2d 247, 253, 12 A.L.R.2d 240, certiorari denied 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112.

Since the Pension Trust inaugurated to qualify under the statute was, and had to be, established for the sole and exclusive benefit of the covered employees, it is unrealistic to say that the Employer ceases to have any connection with it merely because contributions have been made. It, as the payor of the intended additional *compensation,* and the covered employees, as the ultimate and exclusive beneficiaries, continue to be the parties most directly interested. When the Plan, under its terms, is to be effectually administered by a Committee of employees designated and appointed alone by the Employer and subject to its absolute removal and replacement, it does no violence to the Plan and its purpose to require that the Employer having this wide power over such appointees make them available as parties over whom the Court can then exercise traditional power to adjudicate the merits. This does not subject the Employer to a personal liability beyond its contributions (or those it has clearly agreed to make so long as the plan remains effective). Nor does it assume that the right of removal and replacement of the Retirement Committee degrades the Committee to a mere selfish tool of the Employer. However, the opportunity for this to occur and, the Committee by paraphrasing the Employer's earlier similar letter of a year before, may have done so here, affords an additional reason why equity is achieved by reading this reasonable requirement into the Plan. Inquiring into the propriety of the Committee's decision, this enables the Court to determine whether this was an independent decision or one dominated largely by Employer wishes *or considerations.*

And, in doing this a Federal District Court, exercising jurisdiction conferred by Congressional Act (here diversity), has the full power of a court of equity, for "Jurisdiction in Chancery is inherent and original, comprehending now almost every exigency of human disagreement, for which there is not an adequate remedy at law", Williamson v. Berry, 8 How. 495, 536, 12 L.Ed. 1170, 1187; Guaranty Trust Co. of New York v. York, 326 U.S. 99, 106, 65 S.Ct. 1464, 89 L.Ed. 2079, 2084, 2085; Ex parte Peterson, 253 U.S. 300, 312, 313, 40 S.Ct. 543, 64 L.Ed. 919, 925, and once again, this demonstrates the dynamic, ageless, timeless capacity of equity to respond to the peculiar changing needs of advancing civilization: " * * * in the increasing complexities of modern business relations, equitable remedies have necessarily and steadily been expanded, and no inflexible rule has been permitted to circumscribe them. As has been well said, equity has contrived its remedies 'so that they shall correspond both to the primary right of the injured party, and to the wrong by which that right has been violated,' and 'has always preserved the elements of flexibility and expansiveness, so that new ones may be invented, or old ones modified, in order to meet the requirements of every case, and to satisfy the needs of a progressive social condition, in which new primary rights and duties are constantly arising, and new kinds of wrongs are constantly committed.' Pom.Eq.Jur. § 111." Union Pacific R. Co. v. Chicago, R. I. & P. R. Co., 163 U.S. 564, 600, 601, 16 S.Ct. 1173, 1187, 41 L.Ed. 265, 278. " * * * the Chancellor always has had, and always must have, a certain power and freedom of action, not possessed by the courts of law, of adapting the doctrines which he administers. He can extend those doctrines to new relations, and shape his remedies to new circumstances, if the relations and circumstances come within the principles of

equity, where a court of law in analogous cases would be powerless to give any relief. In fact there is no limit to the various forms and kinds of specific remedy which he may grant, adopted to novel conditions of right and obligation, which are constantly arising from the movements of society. * * *", Vol. I, Pomeroy's Equity Jurisprudence, 5th Ed. (1941), § 60, page 78. See also, Tower Hill-Connellsville Coke Co. of West Virginia v. Piedmont Coal Co., 4 Cir., 64 F.2d 817, 91 A.L.R. 648; Bowen v. Hockley, 4 Cir., 71 F.2d 781, 94 A.L.R. 856.

With this nascent power, equity can shape its sanction, Sprague v. Ticonic National Bank, 307 U.S. 161, 164, 165, 167, 59 S.Ct. 777, 83 L.Ed. 1184, 1186, 1187; Alexander v. Hillman, 296 U.S. 222, 239, 56 S.Ct. 204, 80 L.Ed. 192, 199, 200, to meet the unique requirements of the cause. And here that need not take the full scope of the injunction sought, but will be satisfied by the Employer, who has already agreed to provide and pay for legal counsel and expenses of the Retirement Committee, taking the steps which are so clearly within its actual power to assure that the Retirement Committee members and their successors become parties for further and not inconsistent proceedings on the merits. We do not, of course, express any views on the availability of various types of relief by judgment, injunction, declaration or otherwise, or the relief, if any, which ought to be granted.

By this means equity takes its creature —the trust agreement—and rescues it from a geographical impasse with consequent legal frustration. In the meantime, it preserves all of the essential characteristics of the Trust with its delineation of legal obligations and rights of settlor, Trustee and *cestui que trust*.

Reversed and remanded.

CAMERON, Circuit Judge (specially concurring).

I concur in the result achieved in the able opinion of Judge BROWN and in most of its language. I would, however, base the reversal chiefly upon the fact, so clearly reflected in the record, that the Employer is the real party in interest and that the Court below can dispose of the issues of the case with the parties before it. Cf. Rules 17 and 19, F.R.C.P., 28 U.S.C.A. and Shields v. Barrow, 17 How. 129, 15 L.Ed. 158.

Both the Trustee and the Retirement Committee are mere agents of appellee, subject to its will and therefore bound to do its bidding. Such an agent is not an indispensable party to a suit against the principal, 19 C.J.S., Corporations, § 1304, p. 988, and it is the duty of the Court below to "strain hard" to grant appellant all the relief possible in the present action. Bourdieu v. Pacific Western Oil Co., 299 U.S. 65, 57 S.Ct. 51, 81 L.Ed. 42.

Moreover, no action by the Committee, involving any discretion, is necessary in connection with the question whether appellant is entitled to receive the reserve liability "attributable to him" under the trust indenture. That instrument provides: "If by reason of disability * * a participant shall cease to be employed by the company, the committee shall certify that fact to the trustee, and such disabled participant shall be entitled to receive from the trustee to [an] amount equal to the reserve liability then attributable to him."

The fact of Ball's discharge and the reasons therefor are determinable between appellant and appellee. The entire matter was handled between them. This issue will be resolved entirely by evidence relating to transactions between Ball and the Employer. If either the Retirement Committee or the Trustee has any duty to perform growing out of that relationship, it is purely ministerial and their connection with the controversy is a formal one and their presence is not indispensable to doing justice as between the parties already before the Court. Cf. Division 525, Order of Railway Conductors of America v. Gorman, 8 Cir., 1943, 133 F.2d 273.

As the opinion of Judge BROWN so well demonstrates, the arrangements by which these funds were accumulated

were a part of the compensation to which Ball was entitled. The facts with respect to those arrangements and his entire relationship with his Employer were and are known only to the participants. One of the main facts to be determined is the circumstances under which Ball's employment was terminated.

At the time of the termination the Employer wrote Ball: "* * * due to the state of your health, we are forced to give you this written notice of our conclusion to terminate your contract of employment effective August 31, 1953." Later the Employer sought to assign unsatisfactory services as the basis for the termination.[1] It may be that the Court trying the facts will conclude the Employer could not legally change front after the formal act of termination. Cf. Godchaux Sugars, Inc., v. Meridian Wholesale Co., 5 Cir., 1923, 289 F. 359, 365, and Ohio and Mississippi Valley Railroad Co. v. McCarthy, 96 U.S. 258, 24 L.Ed. 693. The trial Court will find no difficulty in ascertaining the true facts with the parties now before it, who alone participated in the transactions upon which the issues will depend. The real parties in interest are before the Court and it is the duty of a court of equity to look through the form of the transaction to its substance and to grant full relief as between the parties before it.[2] I concur in reversing the judgment of the Court below and in remanding the case for decision upon its merits.

HUTCHESON, Chief Judge (dissenting).

The complaint alleges: the creation by the defendant of a gratuitous pension or retirement fund; the appointment of a trustee therefor; the obligation upon the trustee to disburse the fund, upon the determination by the Retirement Committee of the eligibility of employees to become participants in the fund, and its certification to the trustee of the amount and kind of benefits payable to them; that the trustee is in truth and fact a custodian of the moneys of the fund with the duty to make such payments under Art. IX, Sec. 93(b) of the trust instrument as directed by the Retirement Committee; that the trustee is subject to the will and desire of the defendant company in view of the fact that Art. X provides that any trustee appointed may be removed by resolution of the Board of Directors of the company; that defendant can and by acting by and through the Retirement Committee, could and should obtain for plaintiff the benefits legally due him under the Retirement Trust; but that the defendant has arbitrarily failed and refused to take the necessary action to have such benefits paid to plaintiff.

Based upon these allegations and the further allegation that defendant's conduct has made defendant liable in damages to plaintiff in a sum the equivalent of plaintiff's retirement benefits, plaintiff brought this action as a two-pronged suit, a primary prong, a common law suit for damages actual and punitive; the second or alternative prong, a suit in equity for a mandatory injunction "compelling defendant acting by and through its Board of Directors and its Retirement Committee to instruct the Trustee to pay the plaintiff the retirement benefits attributable to him."

To this petition the defendant filed a motion to dismiss on the ground: that the Mount Union Bank of Alliance, Ohio, the Trustee and the Retirement Committee of the retirement trust are indispensable parties to the action. The Trustee is in-

---

1. See, e. g., letter of October 28, 1953 to Ball concluding: "This action was taken for the reasons as the record will show the results of the conduct of affairs for the company in the division made necessary a change in the division management. It is the conclusion of the company that you are not entitled to participate in the retirement plan."

2. Estes v. Shell Oil Co., 5 Cir., 234 F.2d 847; Mackintosh v. Marks' Estate, 5 Cir., 1955, 225 F.2d 211; Hudson v. Newell, 5 Cir., 1949, 172 F.2d 848; Seeley v. Cornell, 5 Cir., 1934, 74 F.2d 353; Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80; Payne v. Hook, 7 Wall. 425, 19 L.Ed. 260.

dispensable since the provisions of the retirement fund require the company to pay the money to the Trustee and confer upon the defendant no legal right, title or interest in or to the funds. The Retirement Committee is indispensable because the trust instrument provides that the *Committee on behalf of the participants,* shall enforce the plan in accordance with the terms of the trust agreement and shall have all powers necessary to (a) determine all questions relating to the eligibility of employees to become participants; (b) to compute and certify to the Trustee the amount and kind of benefits payable to participants; and (c) to authorize all disbursements by the trustee from the trust fund.

An additional ground for dismissal was that the suit was in effect to compel distribution of a fund which is in the possession of the Trustee with its situs in the State of Ohio, without the jurisdiction of the court.

In an order stating that the grounds of the motion are not well taken, the motion to dismiss was denied. Answering as to the common law relief sought, defendant denied that it was or could be liable in damages. Pointing out that in accordance with the provisions of the retirement trust, it has no legal right, title or interest to or in any of the funds which have been paid to and are now in the possession of the Trustee and that it has no supervision or control of them, it denied plaintiff was entitled to the mandatory injunction or any of the equitable relief sought.

Finally, it alleged as it had done in the motion that the Trustee and Retirement Committee are indispensable parties.

The case coming on to be heard upon facts [1] admitted by the pleadings or by

---

1. As stated in Appellant's brief, these are:
"The following facts are admitted by the pleadings or by stipulation, or by both."

The retirement plan involved in this case is admittedly one in which the employer made all contributions; appellant contributed no money to the plan.

"Appellant was employed by McCaskey Register Company for a period of over thirty-three (33) years.

"McCaskey Register Company merged with Victor Adding Machine Company in October, 1953, the latter being the surviving company.

"McCaskey had caused to be put into effect a retirement trust on December 1, 1947. Appellant became a participant in the plan at the time it was instituted, and McCaskey at various times from that date until December 1, 1952, made various contributions to such plan by reason of Appellant being a participant.

"On April 21, 1953, Appellant suffered a heart attack with evidence of coronary occlusion and was hospitalized.

"McCaskey was duly notified of Appellant's condition by letter from the physician attending Appellant.

"Appellant's employment was thereafter terminated on August 31, 1953, by a letter in writing stating that the reason for his discharge was due to the state of his health.

"Thereafter Appellant wrote McCaskey a letter asking about his pension rights, and McCaskey replied that it was the con-clusion of the Company that he (Appellant) was not entitled to participate in the retirement plan.

"Appellant's attorneys, in reply to their demand for the pension benefits, received a letter from the Trustee directing the demand to the Retirement Committee, advising that all disbursements are made at the direction of such Retirement Committee.

"Thereafter Appellant's attorneys received a letter from the Retirement Committee, in response to the attorneys' demand for Appellant's pension benefits. Such letter advised that Appellant was not a participant in the plan at the time of his discharge by reason of not being a salaried employee, and the letter from the Retirement Committee in substance denied Appellant's claim.

"Excerpts from the retirement trust instruments which are pertinent to this case are quoted as follows:

" 'Article 1. The purpose of the trust is to provide economic security for the employees of the McCaskey Register Company to the fullest practicable extent after a period of faithful service with the company.

" 'Article 10, Section 10.2(b). Any trustee appointed hereunder may be removed by resolution of the Board of Directors of the company.

" 'Article 3, Section 3.1. The Board of Directors of the Company shall appoint forthwith a Retirement Committee of

stipulation, or both, in no manner supporting the claim that the defendant was in possession of the trust funds or had any control over them and further showing that the Retirement Committee had ruled against plaintiff's eligibility, the District Judge entered the order appealed from which dismissed the complaint without prejudice to an action in a court of competent jurisdiction against the Trustee and the Retirement Committee under the Retirement Trust.

Here on three specifications [2] of error appellant, while not abandoning his suit for damages, directs his argument mainly to the denial of his suit for injunction or other equitable relief. The appellee urging (1) that the trial court correctly held that it had no jurisdiction to enforce appellee's alleged rights for a pension or retirement benefits against it, and (2) that appellant does not have a contractual right to recover a gratuitous pension from appellee insists that the judgment was clearly right and should be affirmed. Without canvassing or assessing the respective arguments, it seems perfectly clear to me that on the undisputed facts hereinabove set out, no reasonable basis has been, or can be, stated for disagreeing with the judgment of the District Court that nothing whatever was shown to have been done, or left undone by defendant which entitled plaintiff to a judgment for damages against it. I do not understand the majority opinion to hold otherwise. If I understand it, and I believe I do, it holds only that the plaintiff was entitled to have its alternative claim against the defendant for equitable relief considered on its merits on the theory, that the District Court could and should have compelled the defendant, by some kind of order with some kind of penalty, to compel the members of the Retirement Committee, citizens of Illinois and not within the jurisdiction of this Court, to become parties to this suit and submit to the adjudication therein of plaintiff's claim upon the retirement fund. As I understand this view it, in effect, concedes that the District Judge was right in thinking that under settled principles, there was, as to plaintiff's equitable suit, a want of indispensable parties. As I understand it too, the suggestion that the defendant, not the plaintiff, must get them into court is an invention of the majority to improve upon or supply the lacks in the established conception that due process requires adequate service or notice under the authority of law before a court of equity or of law may take jurisdiction of a party. I cannot bring myself to go along with these views. This is so not only because of their novelty, but because I believe them to be a fundamental

three (3) members to hold office during the pleasure of the Board.

"'Article 3, Section 3.8. The Committee on behalf of the participants shall enforce the plan in accordance with the terms of the Trust Agreement, and shall have all powers necessary to accomplish that purpose, including but not by way of limitation, the following: (a) to determine all questions relating to the eligibility of employees to become participants, (b) to compute and certify to the Trustee the amount and kind of benefits payable to participants.

"'Article 9, Section 9.3(b). If by reason of disability, established in (a) above, a participant shall cease to be employed by the company, the Committee shall certify that fact to the Trustee, and such disabled participant shall be entitled to receive from the Trustee an amount equal to the reserve liability then attributable to him.'

"In this connection, it was admitted by the pleadings and by stipulation that at the time of Appellant's discharge from the company, to wit: August 31, 1953, the reserve liability then attributable to Appellant as computed by actuaries was the sum of $8,260.98."

2. "First point of error. The District Court erred in failing to grant appellant relief under the testimony and admitted facts.

"Second point of error. The District Court erred in holding that appellant must sue the Trustee and the Retirement Committee.

"Third point of error. The District Court erred in refusing to grant either damages, actual and exemplary, or an injunction on the ground that appellant had not pursued his legal and lawful rights."

attack upon just principles too firmly embedded in the law to be dislodged upon the compulsion of a feeling, however sound, that the defendant should be, but is not, in sympathy with plaintiff's claim. On the contrary, I am of the firm conclusion that plaintiff's whole case against defendant was unfounded. The law action was, because defendant had done nothing to subject it to a suit for damages. The equitable action was, because under the undisputed facts, defendant had no control, it ought not to, indeed it could not, exert control over the decisions or actions of the Retirement Committee or the Trust, and in my opinion, it would be an act of Judicial Tyranny if any court would undertake to compel it to so act. The District Judge in providing, perhaps unnecessarily but out of the abundance of caution, that his judgment was without prejudice to appropriate action against the Committee and the Trust correctly pointed plaintiff to the way already pointed out in the Trust Instrument to secure a determination of her rights in respect to the pension fund. In pursuing that way, plaintiff's yoke will be as easy, her burden as light, as that of an ordinary plaintiff who is required to obtain jurisdiction over the person of a defendant. If she can find the defendants in the jurisdiction she prefers, or can obtain sufficient substituted service upon them to sue them there, well and good. If she must go to the jurisdiction where they reside, this is no more than others have had and will have to do. I know of no statute, rule or decision which invests an Appellate Court, or for that matter any court, with power to acquire jurisdiction over a person by forcing a defendant, under the theory that he has control of that person, and under threat of contempt if he does not do so, to compel that person to come in.

We are told in Scripture that when the invited guests would not come to a banquet, the Lord of that banquet ordered his servant to go out into the highways and byways and compel guests to come in, but that was under another civilization with a different constitution from ours, and besides they were already in the jurisdiction.

I think the judgment should be affirmed. I respectfully dissent from its reversal.

Rehearing denied: HUTCHESON, Chief Judge, dissenting.