### SEELEY et al. v. CORNELL et al.

### No. 7468.

Circuit Court of Appeals, Fifth Circuit.

Dec. 20, 1934.

Rehearing Denied Jan. 11, 1935.

See, also, 6 F. Supp. 241.

T. R. Boone and Kearby Peery, both of Wichita Falls, Tex., for appellants.

Henry E. Jackson, Chas. Gibbs, and Scott Snodgrass, all of San Angelo, Tex., Ed. M. Whitaker, of El Paso, Tex., F. H. DeGroat, of Duluth, Minn., and Chas. A. Holden, of Tulsa, Okl., for appellees.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

This is an appeal from a judgment dismissing a bill in equity on the sole ground that indispensable parties had been omitted whose joinder and proper alignment as plaintiffs would defeat jurisdiction based on diversity of citizenship.

The bill is lengthy and diffuse, occupying 34 pages of the printed record, and therefore the case appears to be complicated. However, stripped of surplusage and redundancy, the material allegations of the bill may

be somewhat briefly stated and the cause of action is clear. The plaintiffs are Viola Seeley, a feme sole, and Ida May Ramsey, wife of G. M. Ramsey, who joins with her, citizens, respectively, of California and Arizona. The defendants are James Cornell and his wife, Emma Cornell, L. W. Elliott, W. H. Colquitt, the American Surety Company, Brian Montague, C. R. Sutton, W. R. Whiteside, Hargrove Hudson, Douglas Oil Company, and the executors of the estate of R. B. Whiteside, namely John D. Lamont, W. C. Robinson, Sophia Whiteside, and Roger B. Whiteside. The named defendants are citizens of Texas, Minnesota, Oklahoma, and New York; therefore diversity of citizenship is shown. The question of venue is not presented, as all the defendants have personally appeared without raising that point.

The following facts appear from the allegations of the bill: Plaintiffs are children and heirs at law of Mrs. M. A. Smith, widow of John Monroe, and wife of W. A. Smith by a second marriage. Each of the plaintiffs inherited one-ninth of the estate of their mother. The parties omitted, considered indispensable by the District Court, are the other heirs of Mrs. Smith, separately inheriting seven-ninths of her estate. With one exception, they are citizens of Texas. The suit was brought solely on behalf of the named plaintiffs, and the other heirs are intentionally and expressly omitted.

Mrs. Smith was the owner of some 21,000 acres of valuable oil land in Pecos county, Tex. She executed a number of oil and gas leases on this land, assisted by her husband, Smith. On September 15, 1927, her son, Jerry Monroe, brought suit in the district court of Pecos county, Tex., praying for a receivership of her property, on the ground that she was incapable of managing her own affairs, and alleging that her husband, Smith, was seeking to acquire her property and was causing her to dispose of it for inadequate consideration. In this suit, W. H. Colquitt was appointed receiver by the presiding judge, C. R. Sutton, and gave the American Surety Company as surety on his bond as receiver. Brian Montague was appointed as his attorney.

On October 22, 1927, plaintiffs employed James Cornell to look after their interests in the estate of their mother and represent them in the receivership proceedings. They executed separate written powers of attorney to him, which were duly recorded. These powers of attorney have never been canceled.

Instead of faithfully and honestly representing plaintiffs, Cornell entered into a conspiracy with Colquitt, receiver, C. R. Sutton, presiding judge, Brian Montague, and L. W. Elliott, to defraud them of their interests in the estate. Pursuant to this conspiracy, Colquitt, as receiver, failed to account for large amounts of money collected by him, over $300,000, to the knowledge of Cornell, and to permit Cornell to convert it to his own use. He was discharged as receiver, after the death of Mrs. Smith, without making an accounting for same. He and his attorney received excessive fees.

On June 5, 1928, Cornell obtained from Mrs. Smith a deed to the property then belonging to her without paying any consideration therefor, for the purpose of defrauding plaintiffs. The deed was taken in the name of C. C. Kirkpatrick, trustee, but was for the use and benefit of Cornell. Plaintiffs' mother was mentally incapacitated to execute the deed, was not aware of its contents and did not realize the nature of her act. On November 1, 1928, Colquitt, as receiver, also executed a conveyance to Cornell of the same property. Mental incapacity of the vendor and want of consideration is also alleged as to this deed.

On December 3, 1928, Mrs. Smith, joined by her husband, filed a suit in the district court of Pecos county against Cornell, Colquitt, and others, charging misapplication of moneys of the estate in receivership. In this suit both Cornell and Jerry Monroe were represented by J. F. Sutton and L. W. Elliott, who were attorneys employed by Cornell.

Mrs. Smith died, intestate, on April 18, 1929. A proceeding to administer her estate was instituted in Tom Green county on July 1, 1929, in which her son, Jerry Monroe, was appointed administrator. No property ever came into possession of Jerry Monroe, as administrator, and the proceeding was unnecessary.

After his wife's death, Smith filed a disclaimer in the above-mentioned suit against Cornell, Colquitt, et al. Cornell then filed an amended answer and a cross-action, claiming to be the owner of all the estate of Mrs. Smith. Colquitt and Jerry Monroe adopted the answer of Cornell. A consent decree was entered by Sutton, the presiding judge, holding the title to all the estate transferred by the deed from Mrs. Smith to Kirkpatrick to be good in Cornell. This judgment was not consented to by plaintiffs and is alleged to be part of the means employed by Cornell to defraud them.

On April 20, 1930, Cornell, through his agent, Lewis Wardlow, fraudulently represented to plaintiffs that there was nothing left in their mother's estate except the surface of the land, and that their interests therein were hardly worth $20,000, but offered to pay them $20,000 each for their interests. At that time he knew that he could sell a portion of the estate to the Douglas Oil Company for approximately $325,000, but concealed this fact from plaintiffs, and in fact their interests were worth at least $35-000 to each. Relying on his representations and having faith in his honesty they executed a conveyance of their two-ninths interests in their mother's estate to Cornell.

R. B. Whiteside, acting for the Douglas Oil Company, had brought a suit in the federal court for the Western district of Texas, entitled R. B. Whiteside v. Jerry Monroe et al., and had tendered $322,500 for part of the estate of Mrs. Smith. Hargrove Hudson was a stockholder of the Douglas Oil Company. R. B. Whiteside was its president; W. R. Whiteside was its vice president. They entered into a conspiracy with Cornell to defraud plaintiffs, pursuant to which a judgment against Whiteside was entered in the federal court, and thereafter Cornell conveyed four-fifths of the property to the Douglas Oil Company, and either he or his wife retained one-fifth of the said property. Hargrove Hudson, W. R. Whiteside, and R. B. Whiteside had full knowledge of the fraudulent manner in which Cornell had acquired the property.

There is sufficient description of the various deeds and other instruments referred to and of the lands involved. There are no allegations that would tend to show that the other heirs have been similarly defrauded or are complaining. Plaintiffs offered to tender or have taken into account the $40,000 they had received from Cornell. There are other allegations of the bill unnecessary to review.

The prayer is for an accounting from their agents and representatives; for a decree for the sums of money due and owing to them by the defendants; for a decree vesting title in them of two-ninths interests in the lands described in the bill, or at least the joint possession of same to the extent of two-ninths interest; that the defendants be decreed to be trustees of the land for their use and benefit and account to them for their two-ninths interests in the proceeds of said land; and for general and equitable relief. There is no prayer for the cancellation of any of the deeds or other instruments re-ferred to in the bill, nor for the setting aside of the various judgments mentioned.

The appeal presents the single question of whether the parties omitted are indispensable. It does not involve the merits of the controversy at all, but a discussion of the various grounds for relief alleged is necessary.

Plaintiffs are suing Cornell, their agent and attorney in fact, to set aside conveyances from themselves to him of their separate one-ninth interests in the estate of their mother, on the ground of fraud; for an accounting by Cornell; for a judgment against Cornell and others alleged to have conspired with him to defraud them for the amount determined to be due them; also to impress the whole property of the estate of their mother, the legal title to which has passed out of all the heirs, with a trust in their favor for their two-ninths interest.

Plaintiffs also are suing, solely on their own behalf, for an accounting by Colquitt, receiver, for the money of the estate of their mother he is alleged to have collected and fraudulently failed to account for and which, pursuant to the conspiracy charged, he converted to the use of Cornell; and for judgment against him and the surety on his official bond.

▇ The rule as to who are considered indispensable parties in a suit in equity in federal courts has been repeatedly announced by the Supreme Court. In substance, it is this: Where the interests of the parties before the court are separable from those of the parties omitted, and the court can do justice between the parties before it, without prejudice to the rights of the absentees, jurisdiction will be maintained. It is unnecessary to attempt to review all the cases. As applicable to the issues presented in this case, the following cases, involving analogous issues, illustrate the rule: In Horn v. Lockhart, 17 Wall. 570, 21 L. Ed. 657, the suit was by heirs against an administrator for an accounting. It was held that, as the interests of the heirs were separable, some, whose inclusion would defeat jurisdiction based on diversity of citizenship, were not indispensable parties and could be dismissed. In Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260, the suit was by one distributee against an administrator of an intestate's estate and the surety on his bond. It was held that the surety was properly joined, and that other heirs were not indispensable parties, as the court could frame a decree to do justice to the parties before it

without prejudice to the rights of the absent parties equally interested. In Waterman v. Canal-Louisiana Bank Co., 215 U. S. 33, 30 S. Ct. 10, 54 L. Ed. 80, an estate was under administration in a state court. The suit was against the executor by one claiming to be an heir at law to establish his interest in the estate, to set aside certain legacies, and to compel the executor to pay to plaintiff his share of the estate. It was held that another heir omitted was not an indispensable party; that, while the federal court could not grant all the relief prayed for and payment could be only in due course of administration, that fact would not defeat jurisdiction, as a decree could be entered preserving the rights of all parties. In Stephen v. Beall, 22 Wall. 335, 22 L. Ed. 786, one of four tenants in common had attempted to mortgage the whole estate. It was held that a suit could be maintained against the mortgagor to subject her one-fourth interest in the land to the mortgage without making the other joint tenants parties.

It is contended by the defendants, other than Colquitt, that the bill does not show any trust or fiduciary relation between the plaintiffs and any of the defendants except Cornell; that it fails to show that the Douglas Oil Company, the Whitesides, and Hudson did not deal with plaintiffs at arm's length; and that it shows that Colquitt and his attorneys were officers of the state court, acting solely under its orders, and could not be classed as fiduciaries and be made to account.

It is not disputed that, where an agent acquires the property of his principal through fraud, he may be made to account and to return the property, or, at least, it may be impressed with a trust to indemnify the principal. It is elementary that the same rule obtains as to those holding under the agent with knowledge of his fraud. Where they are charged with having conspired with him, the case is, if anything, stronger. The bill alleges knowledge of the fraud in the agents of the Douglas Oil Company and the conspiracy between them and Cornell, and is sufficient in that respect.

It is apparent that the other heirs have no interest in the two-ninths separate share of the plaintiffs in their mother's estate and could not be affected by an accounting by Cornell and those alleged to be his coconspirators or by a recovery against them merely as to that interest. To that extent they are not indispensable parties.

Whether the plaintiffs may maintain the case they allege against Colquitt for an accounting as receiver presents more difficulty. We entertain no doubt that Colquitt occupied a fiduciary relation to Mrs. Smith, and after her death to all her heirs, and he has not objected to the jurisdiction of the court in any way. On the contrary, it appears from the record that he has filed an answer admitting many of the material allegations of the bill. However, this presents but a minor cause of action, not affecting the bill as a whole, and should it later appear that plaintiffs may not sue him as receiver, under the other prayers for specific relief and the prayer for general relief, the court could proceed to judgment on the other allegations of the bill. Waterman v. Canal-Louisiana Bank, supra; Lockhart v. Leeds, 195 U. S. 427, 25 S. Ct. 76, 49 L. Ed. 263.

It appears from an opinion of the District Court in the record that he thought a decision of the case involved the setting aside of deeds transferring the whole property to Cornell, and of judgments validating them, and this required the joinder of all the heirs. The bill does not seek to set aside these deeds and judgments in toto, but only so far as affects the separate interests of plaintiffs. It is charged that these deeds and judgments were secured by fraud. It is also charged that the agents of the Douglas Oil Company and others to whom Cornell transferred part of the property had knowledge of his fraud and conspired with him to defraud the plaintiffs. These deeds and judgments present no difficulty, as it is within the powers of a court of equity to deprive a party of the benefit of a deed or judgment obtained by fraud without their being set aside. League v. De Young, 11 How. 185, 13 L. Ed. 657; McDaniel v. Traylor, 196 U. S. 415, 25 S. Ct. 369, 49 L. Ed. 533; Simon v. Southern Railway Co., 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492.

We conclude that the parties omitted are not indispensable, and the District Court has jurisdiction to decide the issues presented on the main cause of action, between the parties to the bill, without prejudice to the rights of the absent parties.

Some of the defendants also moved to dismiss the bill on the ground of multifariousness. The District Court did not decide this issue, but, in view of a new trial, we may do so. It is apparent that the plaintiffs assert the same cause of action, which is joint, and the liability asserted against all the defendants is joint. Therefore, under

the provisions of Equity Rule 26 (28 USCA § 723) the objection of multifariousness will not lie.

The judgment appealed from is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.