### HUDSON et al. v. NEWELL et al.
#### No. 12417.

United States Court of Appeals
Fifth Circuit.

Feb. 24, 1949.

Ben F. Cameron and Lester E. Wills, both of Meridian, for appellants.

R. E. Wilbourn, of Meridian, Miss., Irwin W. Coleman, W. Calvin Wells, J. Morgan Stevens, and Garner W. Green, all of

Jackson, Miss., and W. S. Welch, Sam V. Pack, J. R. Buchanan and A. S. Scott, all of Laurel, Miss., for appellees.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

On Dec. 11, 1945, the appellants as plaintiffs filed in the District Court four suits concerning four contiguous tracts of land in Mississippi, each of which was claimed by different defendants, with the oil therefrom, which was being extracted by two oil companies also named as defendants. On March 16, 1946, amendments were made to each suit adding two additional counts and asking additional relief. The plaintiffs claimed all the lands under the same title and the pleadings in the four suits and the relief prayed were nearly identical. The defendants filed motions to dismiss for want of jurisdiction because certain persons were interested who were not made parties, who would if made parties destroy the diversity of citizenship on which federal jurisdiction was invoked. Because similar questions were involved in them all, the four suits were consolidated. The district judge made findings of fact on the motions and upheld jurisdiction. The motions were later renewed because of the decisions of this court in Keegan v. Humble Oil & Ref. Co., 5 Cir., 155 F.2d 971, and Calcote v. Texas & Pacific Oil & Coal Co., 5 Cir., 157 F.2d 216. After an extensive hearing findings of fact and conclusions of law were again made, and the suits were dismissed "for absence of indispensable parties who, if brought in, would destroy diversity of citizenship and oust the court of jurisdiction." This appeal followed.

1. In this court a motion to dismiss the appeal is made by some of the appellees on the ground that the controversy is moot, because the issues have been adjudicated in a suit to which all were parties in the Chancery Court of Mississippi by a final decree affirmed by the Supreme Court of Mississippi on April 21, 1947, Hudson et al. v. Gulf Refining Co. et al., Miss., 30 So.2d 66; Id., Miss., 30 So.2d 421, and certiorari denied by the Supreme Court of the United States Oct. 13, 1947, 332 U. S. 775, 68 S.Ct. 84. The final decree of the Chancery Court is said to have been pleaded as res judicata and as a basis for summary judgment in the case before us, and to be discoverable in this record though not printed, and we are asked to notice judicially the actions of the Supreme Courts of Mississippi and of the United States as shown in their published reports. Appellants do not concede the case is moot, and vigorously argue that since the lower court did not reach the plea of res judicata and motion for summary judgment, but held only that it had no jurisdiction, no such question can be raised on this appeal; and they further argue that for reasons they urge they are not bound by the Chancery Court judgment. We think on well settled principles this appeal reaches only the correctness of the dismissal for want of jurisdiction, and that the question of res judicata stands for an orderly first trial in the court below if there is jurisdiction. McDonald v. Smalley, 1 Pet. 620, 7 L.Ed. 287; Thomas v. Thomas, 5 Cir., 165 F.2d 332; Tucker v. Phillips, 5 Cir., 148 F.2d 904. The controversy is not moot. The motion to dismiss the appeal is overruled.

2. The cases of Keegan v. Humble Oil & Ref. Co., 5 Cir., 155 F.2d 971, and Calcote v. Texas Pacific Coal & Oil Co., 5 Cir., 157 F.2d 216, 225, are not revolutionary. They overruled no older decisions, and are but two among many dealing with the question here presented. Each case must be determined on its own facts. The fundamental principles are simple. They are: (1) Where federal jurisdiction rests on diversity of citizenship the diversity must be complete, and to see whether it is, all parties will be aligned as plaintiffs or defendants according to their real interests; (2) A court cannot adjudicate the rights of persons who are not parties before it; they will be brought in if possible and if they will not destroy diversity. (3) If diversity will be thereby destroyed the court will not require them to be brought in, but will enquire if there is any relief it can properly give without them; if there is, it will give it without prejudice to the rights of the absent; if none can be given the suit will be dismissed. In the latter event the dismissal is not for want of federal jurisdic-

tion, but for lack of indispensable parties. See Federal Rules of Civil Procedure No. 19, 28 U.S.C.A.

■■ 3. We are of opinion that federal jurisdiction exists in each of the four suits as they are brought, complete diversity existing and the principal amount involved being sufficiently alleged to be more than $3,000. The relief prayed is multiform. The original complaints asked a decree that the plaintiffs are the true owners of the land and of the mineral rights therein and of the oil and gas removed from it by the defendant oil companies. If they can prove the land and oil are theirs we see no reason why they should not have judgment for them against those sued; possible claimants not in court would not of course be bound by the result. If such claimants' title is shown as a defense their interests can be saved from the decree. But the next prayer that all the adverse deeds be cancelled cannot be granted if there are any persons interested under them who are not before the Court. The prayer that the oil companies discover what oil they have taken out can be granted if the plaintiffs prove they have some interest in it, though not the whole interest.

■ 4. The second counts prayed a declaratory judgment as to the meaning and effect of leases made between the plaintiffs and the oil companies; and particularly that a provision in those leases that plaintiffs' right to one-eighth of the oil should be determined in a named suit between all the claimants then pending in the State Chancery Court (the same mentioned above in connection with res judicata) did not mean just that, but that this federal court was equally a court of competent jurisdiction to determine plaintiffs' right; and if necessary that the leases be reformed to express the latter intent; and for an accounting with the oil companies under these leases. If these prayers had related only to these leases and the lessees, the other claimants of the land not being signers of these leases, there would be no need of further parties; but the leases promise to pay the plaintiffs only on a compromise or an adjudication in a named suit to which all claimants were parties. The effort to make this federal case a substitute for the State case to get an adjudication could not succeed unless all the claimants to this land were parties to it. The question of parties must be faced.

The third counts also are based on the leases and the prayers are substantially the same. The first counts thus seek to establish title to the land and by consequence to the oil. The second and third counts seek an account of one-eighth of the oil by reason of the leases made by plaintiffs to the oil companies.

■ 5. The title of plaintiffs, according to their pleadings, is derived, as is that of all adverse claimants, from one Noah L. Hudson, who in 1878 conveyed all the lands involved to his wife for her life. The deed is lost or destroyed and the public record of it also destroyed by the burning of the court house. The plaintiffs are the heirs of Noah L. Hudson and inherited the remainder title at his death in 1895, which remainder vested in possession at the death of the wife in 1928. She however had made conveyances purporting to be in fee to parts of the land to several named persons, who in turn conveyed to others. When in 1937 and 1938 oil was discovered in the vicinity these grantees made leases to the oil companies, reserving one-eighth royalty, and the royalties and lands became much subdivided thereafter by many conveyances. The plaintiffs brought suit in the Chancery Court of Mississippi against all the adverse claimants and the oil companies touching the title and the oil. To facilitate production, however, the plaintiffs in 1944 also made leases to the same oil companies on the same lands on the same terms, but the lessees acknowledged no right in plaintiffs and promised them no royalties unless and until in the pending suit in the Chancery Court the plaintiffs by compromise settlement or by final decree established that they were the owners of the lands and minerals or an interest therein. The plaintiffs, attempting to dismiss their suit in the Chancery Court, on Dec. 11, 1945, brought in the federal court the present four suits, which embrace all the land save 20 acres, making parties only those claimants to each tract as to whom diversity of citizenship existed, and omitting the others. Two of these suits allege that the claimants not joined

as parties are too numerous to be joined, but that those joined are proper to represent them as a class. The court has taken no action making them class suits. We do not see how this could well be done. They were not too numerous to be joined in the Chancery Court, and some of them may have title by limitation or prescription or otherwise. A number of them also are interested by "unitization" of separately claimed tracts for oil production, which is mentioned in the complaints and permitted by all the leases, and which will be specifically discussed below.

It is clear as above stated that no cancellation as prayed of all adverse deeds, nor even of those made by Mrs. Hudson, can be decreed unless every person interested under them is before the court. The Calcote case, supra, was one of cancellation of an instrument. The leading case of Shields v. Barrow, 17 How. 130, 15 L.Ed. 158, was a case of rescission, which is the equivalent of cancellation. We know of no exception to the rule that an instrument cannot be destroyed totally by a decree unless all parties to it, or their successors in interest, are before the court. The Keegan case, supra, presents additionally another rule, that the fixing of a land line cannot be decreed unless all adversely interested are heard, for they are necessarily affected. It is akin to Barney v. Baltimore, 6 Wall. 280, 18 L. Ed. 825, where for a like reason it was held that a partition cannot be decreed without the presence of all persons interested in the land. But these suits do not seek to establish any land lines, nor to partition any land. They do not seek to partition any oil on hand or make final distribution of any fund in court which will extinguish all rights in it. The first counts seek only to establish by decree the plaintiffs' rights in land and oil produced as against persons who are in court. They pray for a decree giving them the entire right, but they cannot be granted that, for it is evident that a part of the adverse claim is not represented before the court, and will have to be excepted, leaving those claimants unaffected. The extent of their claims might be in doubt and thus leave the oil companies uninformed as to what to withhold in respect of them, but the indications are that they know, as they must, in order to make royalty payments under the original leases. If there is a real uncertainty, a resort might be had by the oil companies to some form of interpleader. That an account may be had for a certain fractional interest without joining all interests we decided in Seeley v. Cornell, 5 Cir., 74 F.2d 353. It would be good practice to require here an amendment stating what fractional interests are unrepresented and to be excluded from the decree, or conversely what interests are represented and to be included. But we think such partial relief, resulting only in personal judgments, can be had.

The interpretation and reformation of the leases made by plaintiffs may be had. Only the oil companies are parties to them. They do not affect the adverse claimants, but are to operate only against claimants adjudicated to have no title or right, and involve at last only a money judgment.

6. The question of "unitization" and its connection with indispensable parties remains. A number of the claimants not joined have no interest unless through unitization of their lands with those in suit. In Mississippi, as elsewhere, the number of permissible oil wells is limited, and to secure production from small tracts not entitled to a well each, several tracts are united by formal recorded agreement to be served together by a single well, the production from which is to be prorated according to acreage among the several tract owners. Such units, before the filing of these suits, had been duly formed, in part from lands included in the suits. The question is whether the owners of other unitized lands acquired such an interest or title in those in suit as that they must be joined in order to grant even partial relief. The district judge held that in Mississippi the oil in place is, as in Texas, conveyed by oil leases, royalty sales, and other formal recorded contracts, and that a unitization contract vests joint ownership jointly in all the unitized reserves in place and in the royalty oil produced from the well, citing Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472. While no Mississippi authorities in point are cited, we believe this to be correct, so that all these owners

must be parties, or the unitized lands must be excluded from any decree. No adoption by plaintiffs appears of the unitizations of their lands.

 7. The plaintiffs in connection with their suit in the Chancery Court had by a recorded instrument conveyed to their attorneys an interest in the recovery. A difference arose as to its meaning and effect and before these suits were filed the attorneys reconveyed to the plaintiffs. The district judge on hearing evidence found this was done in good faith and that at the time the suits were filed in the district court the attorneys had no interest in the lands and minerals and need not be made parties. We see no reason to disagree. In Chance v. Buxton, 5 Cir., 163 F.2d 989, we held that one who had owned land and made a deed to an interest in it and afterwards conveyed in fee without warranty had no interest thereafter and need not be made a party to an action to cancel the first deed.

We therefore hold that while the full relief prayed cannot be given with only the parties before the court a limited relief can be, and the suits should be retained to enquire into it. The plea of res judicata and the motion for summary judgment based on that ground may when heard end the case. If not, on a pretrial conference and possibly after requiring more precise pleadings to narrow the interests in contest, issues may be developed which can be readily and usefully disposed of. The judgment of dismissal for want of jurisdiction is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed.