**WHELAN et al. v. PLACID OIL CO. et al.**

No. 13687.

United States Court of Appeals
Fifth Circuit.

July 24, 1952.

Morton Taylor, Tyler, Tex., John E. Taylor, Marshall, Tex., for appellant.

Ralph B. Shank, Dallas, Tex., James K. Smith, Fort Worth, Tex., B. B. Barber, Shreveport, La., Walter C. Clemons, Houston, Tex., for appellee.

Before BORAH, RUSSELL, and RIVES, Circuit Judges.

BORAH, Circuit Judge.

Appellees, Placid Oil Company, Gulf Oil Corporation, and Stanolind Oil & Gas Company, brought this suit in trespass to try title against appellants, D. E. Whelan and R. J. Whelan, to establish their alleged title to an undivided one-half interest in and to the seven-eighths oil, gas and mineral leasehold estate in and under a tract of 146 acres of land situated in the Betty Humphries Survey, Harrison County, Texas, and for an accounting for one-half of all of the oil and gas produced and marketed by appellants from the mineral leasehold estate. Appellants answered with a plea of not guilty and further pleaded that they were the owners of the oil, gas and mineral leasehold estate described in the complaint. After answering, appellants filed a motion to dismiss for want of jurisdiction on the ground that certain persons were interested who were not made parties, who would, if named parties, destroy the diversity of citizenship on which federal jurisdiction was invoked. The district judge carried the

motion along with the merits and after hearing the evidence and argument of counsel upheld jurisdiction; found that appellees' lease was senior and superior to appellants' lease and that appellees were entitled to an accounting for one-half of the proceeds from the sales of production from the well located on the 146 acre tract; and rendered judgment in favor of appellees and against the appellants and each of them in the sum of $22,912.31 together with interest thereon at the rate of 6% from the date of judgment until paid. This appeal followed.

The material facts were found by the trial court to be substantially as follows: On August 18, 1937 the fee simple title to the 146 acre tract here involved was owned by W. N. Peal, a widower, and his four children, Dean Davidson, A. H. Peal, Vee Tittle and Hallie Peal. On the day aforementioned W. N. Peal and his four children executed an oil, gas and mineral lease to W. W. Blocker, lessee. The lease covered the 146 acre tract and was for a primary term of ten years from July 29, 1937, and for so long thereafter as oil, gas or other mineral was produced from said land. This lease passed by assignment to Gulf Oil Corporation and Placid Oil Company and was extended annually throughout the primary term by the timely payment of delay rentals. W. N. Peal, one of the lessors in the Blocker lease, died intestate on September 12, 1937, and his four children, above named, inherited his one-half interest and became the owners of the entire interest in the minerals in and under the 146 acre tract, subject to the terms and conditions of the Blocker lease. On April 12, 1945, the four Peal children conveyed to Harry Crawford a one-half undivided interest in the minerals in and under the 146 acre tract, subject to the terms and conditions of the outstanding Blocker lease.

On the 4th day of March 1947, and within the primary term of the Blocker lease, Placid Oil Company and the four heirs of W. N. Peal executed an amendment to the Blocker lease which authorized the pooling of their interests with other lands and interests. Harry Crawford, under whom appellees assert no title, refused to join in this amendment. Subsequently, by written instrument dated March 12, 1947, Placid Oil Company and others, including the Peal heirs, established a unit consisting of 696.82 acres of land designated as Placid Oil Company—Dee Knox Unit No. 1. The 146 acres here involved was included within the description of said unit. The unit agreement, according to its terms, was established for the purpose of drilling for and producing gas condensate, distillate and other liquid hydrocarbons except oil. All of the owners of the minerals under the 146 acre tract except Harry Crawford joined in the execution of the unitization agreement. In executing this instrument the parties expressly ratified, adopted and confirmed the act of Placid Oil Company in pooling and unitizing the lands within the unit area and also agreed, "That the commencement, drilling, completion of or production from a well on any portion of said unit shall have the same effect upon the terms of each lease covering the lands in the unit as if a well were commenced, drilled, completed or produced on the land embraced by each lease in the unit; and for royalty paying and all other purposes, it is mutually agreed that said unit contains 696.82 acres * * *." Under the terms of this agreement and as a consideration therefor Placid Oil Company was obligated to commence operations for the drilling of a well in search of oil or gas at a location on the unit area within forty-five days from March 12, 1947. This well was drilled on the unit area within the time and in the manner prescribed and was completed as a gas well in June of 1947 and has been continuously producing gas in paying quantities. Since its completion Placid Oil Company has tendered Dean Davidson, A. H. Peal, Vee Tittle and Hallie Peal checks in payment of their royalties on production continuously from month to month.

On June 23, 1947, for the purpose of obtaining an allowable for its unit well No. 1 located on its Dee Knox Unit No. 1 Placid Oil Company filed an affidavit with the Railroad Commission of Texas in which it represented to the commission that of the 696.82 acres within the unit area, 623.82 acres of the unit area were unitized by consent of the owners of the royalty and lease-

hold estates but that, as to the remaining 73 acres, Harry Crawford had refused to join in the unitization agreement and unitize his interest.

By written instrument dated February 16, 1948, by and between Placid Oil Company and the numerous parties who own or claim to own interests in the Dee Knox Unit, it was mutually agreed that Placid should process or cause to be processed the gas produced from the well on said unit for the purpose of extracting gasoline or other liquid products therefrom. This processing agreement expressly recognizes that the Dee Knox Unit is in full force and effect and that all of the parties owning minerals in the 146 acres of land subject to the Blocker lease, save Harry Crawford, ratified and adopted it.

By gas well allowable supplement, dated September 7, 1948, the Commission provided for a gas allowable for Dee Knox Unit Well No. 1 by using an acreage factor of 550.82 acres, which was 146 acres less than the acreage within the original unit area.

On February 12, 1949, Harry Crawford, Dean Davidson, A. H. Peal, Vee Tittle and Hallie Peal executed an oil, gas and mineral lease to the appellant, R. J. Whelan, covering the 146 acres of land here involved. The appellants, D. E. Whelan and R. J. Whelan, drilled a well in search of oil or gas on the 146 acre tract and this well was completed on February 2, 1950 as a producer of gas and gas distillate and it was still producing at the time of trial.

On the basis of these findings, none of which are challenged on this appeal, the trial court stated its conclusions of law as follows:

"The Blocker lease dated August 18, 1937, * * * insofar as this lease covers a one-half undivided interest in and to the 146 acre tract of land is valid, alive and subsisting, and plaintiffs are entitled to recover of and from the defendants and each of them title to and possession of a one-half undivided interest in and to the oil, gas and mineral leasehold estate in, on and under the 146 acre tract of land. In addition, plaintiffs are entitled to an accounting for one-half of the proceeds from the sales of production from the well located on the 146 acre tract, and plaintiffs are required to pay to the defendants for one-half of the cost of drilling, completing, equipping and operating the well located on the 146 acres, and plaintiffs in turn are entitled to one-half interest in the well and the personal property and equipment used in connection therewith.

"The Whelan lease dated February 12, 1949, * * * in so far as this lease covers the undivided one-half interest of Harry Crawford in and to the oil, gas and other minerals under the 146 acres involved in this action, is valid, alive and subsisting, and said lease is owned by the defendant, R. J. Whelan."

Appellant's principal contention is that the trial court erred in overruling the motion to dismiss. Appellant contends that the various owners of royalty interest [1] under appellees Dee Knox Unit, who were not made parties, are indispensable parties whose interest in the subject matter of this suit would compel their alignment as parties plaintiff and the joinder of said parties, all of whom are citizens of the state of Texas, would deprive the court of jurisdiction based upon diversity of citizenship.

As we have shown, this is a suit between adverse lessee claimants for title to and possession of an undivided one-half interest in a mineral leasehold estate. Such being the nature of the present controversy, it follows that Placid must either establish its title against the Whelans or lose it. Placid does not challenge the trial court's finding that the primary term of its lease from the Peal heirs expired without any production from the 146 acre tract covered by the lease. Consequently, it can claim a leasehold in the Peal heirs' one-half of the minerals only by virtue of the unitization agreement and the production from acreage elsewhere in the unit. Since this must be

---

1. These are either overriding royalty owners or royalty owners in the Dee Knox Unit.

and is the basis of Placid's claim, it follows that all of the other mineral owners who have joined in the unitization agreement have an interest in the Peal Heirs' one-half of the minerals. Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472. This is true for the reason that the unitization agreement vests all the lessors of land in the unitized block with joint ownership in all the unitized reserves in place in the unit—the ownership being in the proportion which the acreage each member contributed to the pool bears to the total acreage in the unitized block. Hudson v. Newell, 5 Cir., 172 F.2d 848.

It is clear and we hold that the parties named in the motion to dismiss are necessary and indispensable parties.

The judgment of the trial court will be reversed with directions to dismiss the action for want of indispensable parties.