Lige ESTES, Appellant,

v.

SHELL OIL COMPANY, Appellee.

No. 15952.

United States Court of Appeals
Fifth Circuit.

June 8, 1956.

Rehearing Denied July 5, 1956.

I. H. Spears, Pasadena, Cal., for appellant.

W. G. Winters, Jr., R. H. Whilden, Houston, Tex., for appellee, Shell Oil Co.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

This appeal presents the question whether the Court below committed reversible error in dismissing for want of indispensable parties a civil action brought by plaintiff for an accounting and a money judgment against defendant for the value of oil wrongfully taken from land in which plaintiff owned an interest. Jurisdiction was invoked on the ground of diversity of citizenship[1] between plaintiff, Lige Estes, a citizen of Texas, and defendant, Shell Oil Company, a citizen of Delaware. Defendant moved to dismiss the complaint because of the alleged absence of indispensable parties assertedly owning both leasehold and royalty interests in the land claimed by plaintiff whose presence, if they should be brought in, would destroy diversity jurisdiction. With its motion defendant filed and served affidavits and copies of mineral conveyances allegedly establishing these interests. The Court below granted said motion and dismissed the complaint and plaintiff appeals.

The complaint, which calls itself "Complaint for Damages, Accounting, and Injunction", alleges that plaintiff was and is the owner of an undivided interest in the land described, that defendant has entered upon said land and produced and is still producing oil and gas in paying quantities and has been so producing for more than twenty years, and has marketed said products for money and has refused to account to plaintiff for his portion thereof or to pay him any part of said money, all without obtaining from plaintiff any conveyance to his portion of the land and the oil, gas and minerals therein; that the defendant has wrongfully converted said petroleum products to its own use, profit and benefit, withholding all of the emoluments therefrom from the plaintiff, and that it will continue to do so unless enjoined by court order. Plaintiff demands an accounting from the defendant together with a money judgment for the amount found to be due, which plaintiff indicates to be more than $250,000, and for injunctive relief as auxiliary thereto.[2]

---

1. 28 U.S.C.A. § 1332; other grounds were vaguely hinted at, but they disclose no merit.

2. Paragraph 9 of the Complaint fairly well epitomizes the relief prayed for and the facts upon which that relief is claimed:

 "9. Plaintiff further alleges the defendant is still producing oil and gas and other minerals from plaintiff's property, and converting same to its own use, profit and benefit, in interstate and foreign commerce, and will continue to do so unless restrained by proper order of this court; that the plaintiff is entitled to have the defendant restrained from further actions as herein described, until this cause is finally determined; and that on final de-

The motion and the supporting conveyances and affidavits assert and tend to establish that, in 1930, Abe Holt and wife, Mary Holt, Hollis Mayfield and wife, Nicey Mayfield, and Tom Bean executed an oil, gas and mineral lease to one W. P. Chandler, who promptly assigned the rights thus acquired to Shell Petroleum Corporation; that Shell Petroleum Corporation, in September, 1932, assigned said lease to certain individuals, reserving, however, a well in the northwest ten acres of the lands described and an overriding royalty in the petroleum products produced from the residue thereof; and that these assigned rights are presently owned by three citizens of Texas. The motion further sets out that, through Shell Petroleum Corporation and the three named individuals who are citizens of Texas, a large number of persons have become royalty owners in the lands sued on. Those persons are named and their addresses given, and therefrom it appears that a great many reside in Texas, some in California, some in Louisiana and others in other states.

The motion further avers that defend-

ant, Shell Oil Company, has become the owner of all of the rights of Shell Petroleum Corporation in the mineral interests acquired and held by it. Neither the motion nor any of its exhibits show who is actually operating said leases or producing the oil therefrom or who has conducted said operations during the twenty year period mentioned in the complaint; nor is the categorical statement in the complaint that the defendant has been for twenty years, and still is, producing and marketing oil, gas and other minerals from said lands contradicted.[3]

Neither the motion nor the supporting documents show the character or extent of the ownership of Chandler's lessors, but the complaint and the affidavits filed on behalf of plaintiff give a fair indication of the persons in the chain of title through whom the Chandler lease came.[4]

 The ruling of the Court below on the motion to dismiss was necessarily based upon the allegations of the complaint and the affidavits and other proofs adduced in contradiction or support thereof.[5] It is clear that, based thereon,

termination hereof, the defendant be required to render an accounting for all oil and gas, and other minerals taken from the land described in this complaint since the first well was brought in, up until and including the 15th well; and that plaintiff have judgment against the defendant for damages, for the unlawful conversion of plaintiff's property; and interest on the sum found due on an accounting, from date of production."

3. One of the affidavits supporting the motion is by defendant's Supervisor of the Crude Oil Title Division of defendant's Land Department which sets forth that the records of the defendant indicate that payments are being made "to the owners of production from leases operated by it and from leases not operated by it but from which it purchases the production;" and the list attached purports to include those to whom such payments have been and are being made and plaintiff is not numbered among them. This affidavit implies that defendant operates some of the leases in effect on the land described in the complaint, and that it does not operate some of the leases. These vague statements in the affidavit

cannot be considered as putting in issue or disproving the allegations of the complaint that production from the said land has been and is being performed by defendant.

4. These documents demonstrate with a fair degree of clarity that the land described in the complaint was owned by Ben Bean, who died intestate in 1921. He left as his heirs his widow, Mary Bean (later Holt), and five children, Ben Bean, Jr., Tom Bean, Nicey Bean (evidently afterwards Mayfield), Frances Bean and Adella Bean.

The Chandler lease seems to have embraced the interests of the widow (who died in 1934) and two of the children, Tom and Nicey. But the Chandler lease does not purport to include the interest of Adella Bean, the mother of plaintiff, through whom he claims his interest.

5. Rule 12(b) (7) F.R.C.P., 28 U.S.C.A.; 2 Moore's Federal Practice, 2d ed. p. 2256 et seq.; Land v. Dollar, 1947, 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209; Young v. Garrett, and companion case, 8 Cir., 1945, 149 F.2d 223; and Paper Container Mfg. Co. v. Dixie Cup Co., 3 Cir., 1948, 170 F.2d 333, certiorari denied 336 U.S. 909, 69 S.Ct. 515, 93 L.Ed. 1074,

there was no showing which would warrant the Court in dismissing plaintiff's action for want of indispensable parties. The granting of the motion by the Court below comes, in our opinion, under the direct condemnation of the decisions of this Court in Hudson v. Newell, 5 Cir., 1949, 172 F.2d 848, and Mackintosh v. Marks' Estate, 5 Cir., 1955, 225 F.2d 211, and the cases therein mentioned.

The Hudson case involved directly the main question here presented. Plaintiffs there sought the cancellation of various written instruments, a declaration that they owned title to the lands involved, and that the terms of a state court judgment did not prevent the maintenance of the civil action there brought; but they also demanded an accounting with and a money judgment against Gulf Refining Company which was producing and marketing the oil from the lands involved. A large number of claimants to title to the lands and mineral interests involved were sued along with Gulf, but a small number whose presence would have destroyed diversity jurisdiction were omitted. Gulf and the defendants before the Court insisted that no decree

could be entered which would not affect the interests of the absent parties in several respects, among them being that, if Gulf was required to pay the Hudsons for oil produced from the lands, the rights of the absent parties to receive payment of their pro rata interests would be affected, and also that Gulf was entitled to be protected against double payment.

This Court held otherwise. It held that the District Court wrongfully dismissed the Hudsons' suit and that jurisdiction ought to have been retained to grant such relief as the facts would justify, including "partial relief, resulting only in personal judgments * * *." [6] The fact that, in the Hudson case, a lease had been given by plaintiffs to Gulf and that here plaintiff is claiming that Shell converted the oil without a lease from him does not weaken or affect the binding force of the Hudson decision. Here, as in Hudson, plaintiff is required to establish good title to the interest claimed, and here, as there, a money judgment is sought only as against the defendant properly before the Court.

reversing D.C., 74 F.Supp. 389. Such proofs have been traditionally proper with respect to grounds numbered (1) through (5) and number (7) as set forth in Rule 12(b), all of which challenge the jurisdiction of the Court.

The amendment of 1946 transmuting a speaking motion under subdivision (6), based upon failure to state a claim upon which relief could be granted, to a proceeding for summary judgment under Rule 56, applies only to this subdivision (6) which deals, not with jurisdiction, but with the merits, and which leads to a final judgment upon the merits. Cf. Slagle v. United States of America, 5 Cir., 228 F. 2d 673.

6. This language taken from 172 F.2d at pages 850–852 illustrates the character and extent of this Court's holding in the Hudson case:

"Each case must be determined on its own facts. The fundamental principles are simple. They are: (1) Where federal jurisdiction rests on diversity of citizenship the diversity must be complete, and to see whether it is, all parties will be aligned as plaintiffs or defendants according to their real interests. (2) A

court cannot adjudicate the rights of persons who are not parties before it; they will be brought in if possible and if they will not destroy diversity. (3) If diversity will be thereby destroyed the court will not require them to be brought in, but will enquire if there is any relief it can properly give without them; if there is, it will give it without prejudice to the rights of the absent; * * *.

"The original complaints asked a decree that the plaintiffs are the true owners of the land and of the mineral rights therein and of the oil and gas removed from it by the defendant oil companies. If they can prove the land and oil are theirs we see no reason why they should not have judgment for them against those sued; possible claimants not in court would not of course be bound by the result. If such claimants' title is shown as a defense their interests can be saved from the decree. * * *

" * * * That an account may be had for a certain fractional interest without joining all interests we decided in Seeley v. Cornell, 5 Cir., 74 F.2d 353. * * * [But] we think such partial relief, resulting only in personal judgments, can be had."

This Court, in the Hudson case, had before it a much stronger argument for bringing in the absent parties because the complaint showed on its face that the Hudsons were claiming title as against the parties who were absent. On the other hand, nothing in this record reflects that plaintiff will be brought into collision with any of those named as alleged indispensable parties. None of those parties claim to be owners of any of the fractional interest of Adella Bean, through whom, alone, plaintiff claims.

These principles are reasserted in the Mackintosh case where the right of plaintiffs to relief in the absence of the parties not before the court was not as clear or direct as here. The point on which that case was decided was that a money judgment was demanded against the defendants properly in court and that relief of that character, at least, could be granted "without directly affecting persons who are not parties to the suit." [225 F.2d 213.] The basis of the holding in that case, 225 F.2d at page 215, is epitomized in this language quoted from the opinion: "The power of a court of equity so to mold its decree as to do complete justice between the parties without adversely affecting those not before the court is exceedingly broad and elastic. We hold that the district court erred in requiring all persons having or claiming any interest in the lands to be made parties, and in dismissing the suit upon plaintiffs' failure to join those whose joinder would have defeated the jurisdiction of the court. Instead, the court should retain jurisdiction and limit any relief granted to such as can be given without prejudice to the absent parties." [7]

The incorrectness of defendant's position appears clearly when reference is had to the cases relied upon by it to sustain the action of the Court below.[8] Vincent, Miller and Keegan all were suits seeking directly to cancel, establish or affect directly title to lands or interests therein. The same is true of Baten, as this language taken from the opinion, 198 F.2d 630, will demonstrate: "As plaintiffs below, they sued said corporation to 'annul' conveyances by the corporation of its mineral interests in the circumstances and for the purposes hereinafter stated. * * * In the body of the complaint, but not in the prayers for relief, there is an incidental request for a declaratory judgment 'fixing the rights and status of' these attorneys in relation to their representation of appellee, and to determine 'what is a reasonable and competent compensation' for them. There is no specific prayer for a judgment quod recuperet for these fees."

The situation here is entirely different from that involved in those cases. No mention is made either in the body of the complaint or in the prayer of cancellation, reformation or other action with respect to any written instrument or any muniment of title. The sole prayer is for a money judgment and for injunctive relief as auxiliary thereto. It is plain that this decision is governed by the Hudson case and those referred to in

---

7. Even the dissent of Chief Judge Hutcheson in the Mackintosh case recognizes the propriety of retaining jurisdiction under circumstances quite analogous to those in the case before us, 225 F.2d 215; "That the plaintiffs had and have the right, without making additional parties, to sue the defendants in the federal court for their fraud and require them to disgorge their alleged ill gotten gains, the district judge did not, and no one could or can, deny. That plaintiffs did not have the right to sue the defendants alone in the federal court for cancellation of instruments on which the rights of others

depend, I had thought, until the opinion of the majority put the district judge in error for following this Court's teachings, settled by the course of decision here culminating in our en banc decision in Hudson v. Newell, 5 Cir., 172 F. 2d 848; Id., 5 Cir., 174 F.2d 546."

8. Vincent Oil Co. v. Gulf Refining Co., 5 Cir., 1912, 195 F. 434; Associated Oil Co. v. Miller, 5 Cir., 1920, 269 F. 16; Keegan v. Humble Oil & Refining Co., 5 Cir., 1946, 155 F.2d 971; and Baten v. Nona-Fletcher Mineral Co., 5 Cir., 1952, 198 F. 2d 629, certiorari denied 344 U.S. 864, 73 S.Ct. 104, 97 L.Ed. 670.

it, and not by the cases listed in Note 8, *supra*, all of which are easily differentiable. These decisions are all consistent and the results harmonious and any failure to perceive this results from a lack of understanding of the fundamental factual differences.

Appellee has filed an additional brief since the case was submitted devoted chiefly to a discussion of our decision in Humphrey v. Stanolind Oil & Gas Co., 5 Cir., 232 F.2d 925. Therein it admits that the complaint in Humphrey is a standard statutory action in trespass to try title, but it seeks to distinguish that case from this one because it contends that Humphrey did not claim that Stanolind was his co-tenant while it claims that Estes does claim Shell as a co-tenant.[9] We find no allegation in the complaint that Shell is plaintiff's co-tenant, although in one or more of the affidavits vague assertions to that effect are made.[10]

Stanolind sought to compel Humphrey to bring in parties situated similarly to those Shell calls indispensable here. Its motion was under Rule 19(b) which, by its terms, applies only to "persons who are not indispensable, but who ought to be parties if complete relief is to be accorded between those already parties * * *." We held that "the power claimed and asserted * * * in effect to give to the defendant the right to compel defendants to join as defendants such persons as the defendant would like to have made parties, has not been conferred and does not exist."

Boiled down to its essence, that is the contention of Shell here. It would like to have before the Court all parties to whom it conceives it may be called upon to answer if plaintiff is successful; or to have the action dismissed because that cannot be done without destroying diversity jurisdiction. It does not lie with a defendant so to take hold of plaintiff's litigation and conduct it according to defendant's ideas and to suit its purposes. The choice of a forum belongs primarily to a plaintiff and it is our duty to sustain a chosen jurisdiction unless there is some legal reason why this should not be done. Certainly no valid reason has been brought forward here.

It is clear that the complaint sets forth facts and prays for relief touching a controversy between plaintiff and defendant with respect to which the others mentioned are not shown by the proof to be indispensable. It follows, therefore, that the order granting defendant's motion to dismiss for want of indispensable parties should have been denied, and for the error in granting it, the order is set aside and the cause is remanded.

Reversed and remanded.

---

9. The following statement is made in appellee's brief: "In the first place Lige Estes has not sued in trespass to try title. However, if we assume he has, he alleges in his complaint that Shell is his co-tenant. Consequently, under the Texas law he must also join all of the other co-owners in the mineral estate."

10. It is interesting that, in Humphrey, Stanolind took a position opposite to that Shell takes here. In its brief Stanolind states: "Appellee does not contend that the parties sought to be joined as Defendants in the lower court were indispensable parties, either under the Federal law or the Texas law. * * * The joinder of proper parties in the state courts of Texas is in the discretion of the Court very much in the same manner as the joinder of necessary parties or conditionally necessary parties is in the discretion of the Federal Court."